## MARRON v. UNITED STATES

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE
NINTH CIRCUIT

No. 185.　Argued October 12, 1927.—Decided November 21, 1927.

1. The requirement of the Fourth Amendment that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant. P, 195.

2. Under the Fourth Amendment and Title 18, U. S. Code, a search warrant describing intoxicating liquors and articles for their manufacture does not authorize the seizure of a ledger and bills of account found in a search of the premises specified in the warrant. P. 196.

3. Officers, in making a lawful search of premises where intoxicating liquors are being unlawfully sold, may lawfully arrest, without a warrant, a person there actually in charge of the premises and actually engaged, in the presence of the officers, in a conspiracy to maintain them, and may contemporaneously, as an incident to the arrest, seize account books and papers not described in the search warrant, but which are used in carrying on the criminal enterprise and are found on the premises and in the immediate possession and control of the person arrested. P. 198.

18 F. (2d) 218, affirmed.

CERTIORARI, 274 U. S. 727, to a judgment of the Circuit Court of Appeals affirming the conviction of Marron on a second trial for conspiracy to maintain a nuisance in violation of the Prohibition Act. See also 8 F. (2d) 251.

*Mr. Hugh L. Smith,* with whom *Mr. Benjamin L. Mc-Kinley* was on the brief, for petitioner.

*Assistant Attorney General Willebrandt,* with whom *Solicitor General Mitchell* and *Mr. John J. Byrne,* Attorney in the Department of Justice, were on the brief, for the United States.

MR. JUSTICE BUTLER delivered the opinion of the Court.

October 17, 1924, the above named petitioner, one Birdsall, and five others were indicted in the southern division of the northern district of California. . It was charged that they conspired to commit various offenses against the National Prohibition Act, including the maintenance of a nuisance at 1249 Polk Street, San Francisco. § 37 Criminal Code (U. S. C., Tit. 18, § 88). One defendant was never apprehended; one was acquitted; the rest were found guilty. Of these, Marron, Birdsall, and two others obtained review in the Circuit Court of Appeals. The judgment was affirmed as to all except petitioner. He secured reversal and a new trial. 8 F. (2d) 251. He was again found guilty; and the conviction was affirmed. 18 F. (2d) 218.

Petitioner insists that a ledger and certain bills were obtained through an illegal search and seizure and put in evidence against him in violation of the Fourth and Fifth Amendments. The question arose at the first trial. The Circuit Court of Appeals held that the book and papers were lawfully seized and admissible. When the second conviction was before it, that court held the earlier decision governed the trial, established the law of the case, and foreclosed further consideration.

For some time prior to October 1, 1924, petitioner was the lessee of the entire second floor of 1249 Polk Street. On that day a prohibition agent obtained from a United States commissioner a warrant for the search of that place, particularly describing the things to be seized—intoxicating liquors and articles for their manufacture. The next day, four prohibition agents went to the place and secured admission by causing the doorbell to be rung. There were six or seven rooms containing slot machines,

an ice box, tables, chairs and a cash register. The evidence shows that the place was used for retailing and drinking intoxicating liquors. About a dozen men and women were there and some of them were being furnished intoxicating liquors. The petitioner was not there; Birdsall was in charge. The agents handed him the warrant and put him under arrest. They searched for and found large quantities of liquor, some of which was in a closet. While in the closet, they noticed a ledger showing inventories of liquors, receipts, expenses, including gifts to police officers, and other things relating to the business. And they found beside the cash register a number of bills against petitioner for gas, electric light, water and telephone service furnished on the premises. They seized the ledger and bills. The return made on the search warrant showed only the seizure of the intoxicating liquors. It did not show the discovery or seizure of the ledger or bills. After indictment and before trial, petitioner applied to the court for the return of the ledger and bills and to suppress evidence concerning them. The application was denied. At the trial there was evidence to show that petitioner made most of the entries in the ledger and that he was concerned as proprietor or partner in carrying on the business of selling intoxicating liquors.

It has long been settled that the Fifth Amendment protects every person against incrimination by the use of evidence obtained through search or seizure made in violation of his rights under the Fourth Amendment. *Agnello* v. *United States,* 269 U. S. 20, 34, and cases cited.

The petitioner insists that because the ledger and bills were not described in the warrant and as he was not arrested with them on his person, their seizure violated the Fourth Amendment. The United States contends that the seizure may be justified either as an incident to the execution of the search warrant, or as an incident to the

right of search arising from the arrest of Birdsall while in charge of the saloon. Both questions are presented. Lower courts have expressed divers views in respect of searches in similar cases. The brief for the Government states that the facts of this case present one of the most frequent causes of appeals in current cases. And for these reasons we deal with both contentions.

1. The Fourth Amendment declares that the right to be secure against unreasonable searches shall not be violated, and it further declares that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." General searches have long been deemed to violate fundamental rights. It is plain that the Amendment forbids them. In Boyd v. United States, 116 U. S. 616, Mr. Justice Bradley, writing for the court, said (p. 624): "In order to ascertain the nature of the proceedings intended by the Fourth Amendment to the Constitution under the terms 'unreasonable searches and seizures,' it is only necessary to recall the contemporary or then recent history of the controversies on the subject, both in this country and in England. The practice had obtained in the colonies of issuing writs of assistance to the revenue officers, empowering them, in their discretion, to search suspected places for smuggled goods, which James Otis pronounced 'the worst instrument of arbitrary power, the most destructive of English liberty, and the fundamental principles of law, that ever was found in an English law book;' since they placed 'the liberty of every man in the hands of every petty officer.'" And in Weeks v. United States, 232 U. S. 383, Mr. Justice Day, writing for the court, said (p. 391): "The effect of the Fourth Amendment is to put the courts of the United States and Federal officials, in the

exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers and effects against all unreasonable searches and seizures under the guise of law. This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all entrusted under our Federal system with the enforcement of the laws. The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures and enforced confessions . . . should find no sanction in the judgments of the courts which are charged at all times with the support of the Constitution and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights."

The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.

And the Congress in enacting the laws governing the issue and execution of this search warrant was diligent to limit seizures to things particularly described. Section 39 of Title 27, U. S. C., provides that such warrant may issue as provided in Title 18, §§ 611 to 631 and § 633.* Section 613 provides that a search warrant cannot be issued but upon probable cause, supported by affidavit naming or describing the person, and particularly describing property and place to be searched. Section

---

* Section 25, Title II, Act of October 28, 1919, c. 85, 41 Stat. 305, 315, is § 39, Title 27, U. S. C. It provides that a search warrant may issue as provided in Title XI of the Espionage Act (June 15, 1917), 40 Stat. 217, 228. Title XI is §§ 611 to 631 and § 633, Title 18, U. S. C.

622 requires the officer executing the warrant to give to the person in whose possession the property taken was found a receipt specifying it in detail. Section 623 requires him forthwith to return the warrant to the judge or commissioner with a verified inventory and detailed account of the property taken. Section 624 gives the person from whom the property is taken a right to have a copy of the inventory. Section 626 provides that, if it appears that the property or paper taken is not the same as that described in the warrant, the judge or commissioner must cause it to be returned to the person from whom it was taken. And § 631 provides for punishment of an officer who willfully exceeds his authority in executing a search warrant.

The Government relies on *Adams* v. *New York,* 192 U. S. 585. That was a prosecution in a state court. It involved no search or seizure under a law, or by an officer, of the United States. Adams was convicted of having gambling paraphernalia in violation of the Penal Code of New York. It appeared that he occupied an office where were his desk, trunk, tin boxes and other articles. Officers came and stated that they had a search warrant. He said it was not his office. They arrested him, searched the place, found " policy slips," etc., and also papers relating to his private affairs. The policy papers were introduced in evidence. There were endorsements in his handwriting on some of them. Over his objection, the private papers were received to furnish specimens of his writing and to show that he occupied the office. He had taken no steps to secure the return of his private papers or to prevent their use as evidence. But at the trial he contended their seizure violated his right to be secure against unreasonable searches, and that their use as evidence compelled him to be a witness against himself in violation of the Fourth and Fifth Amendments, and in violation of similar provisions of

the state constitution. The Court of Appeals (176 N. Y. 351) held that the provisions of the Federal Constitution did not apply; that the use of the private papers as evidence did not violate the state constitution; declared that it expressed no opinion as to the seizure, and applied the rule that a court, when engaged in trying a criminal case, will not take notice of the manner in which the witnesses obtained papers offered in evidence. And this court, assuming without deciding that the Fourth and Fifth Amendments were applicable, held the use of the private papers as evidence did not violate any right safeguarded by these Amendments; and, after reference to the procedure at the trial, declared that " courts do not stop to inquire as to the means by which the evidence was obtained." The court did not decide whether the seizure violated the Fourth Amendment. It decided that the admission in evidence of the private papers did not infringe the Fourth or Fifth Amendments. The case does not support the Government's contention. And see *Weeks* v. *United States, supra,* 394–396; *Silverthorne Lumber Co.* v. *United States,* 251 U. S. 385, 392; *Agnello* v. *United States, supra,* 34. And it is clear that the seizure of the ledger and bills, in the case now under consideration, was not authorized by the warrant. Cf. *Kirvin* v. *United States,* 5 F. (2d) 282, 285; *United States* v. *Kirschenblatt,* 16 F. (2d) 202; *Steele* v. *United States,* 267 U. S. 498.

2. When arrested, Birdsall was actually engaged in a conspiracy to maintain, and was actually in charge of, the premises where intoxicating liquors were being unlawfully sold. Every such place is by the National Prohibition Act declared to be a common nuisance, the maintenance of which is punishable by fine, imprisonment or both. § 21, Tit. II, Act of October 28, 1919, c. 85, 41 Stat. 305, 314 (U. S. C., Tit. 27, § 33). The officers were authorized to arrest for crime being committed in their presence, and

they lawfully arrested Birdsall. They had a right without a warrant contemporaneously to search the place in order to find and seize the things used to carry on the criminal enterprise. *Agnello* v. *United States, supra,* 30; *Carroll* v. *United States,* 267 U. S. 132, 158; *Weeks* v. *United States, supra,* 392. The closet in which liquor and the ledger were found was used as a part of the saloon. And, if the ledger was not as essential to the maintenance of the establishment as were bottles, liquors and glasses, it was none the less a part of the outfit or equipment actually used to commit the offense. And, while it was not on Birdsall's person at the time of his arrest, it was in his immediate possession and control. The authority of officers to search and seize the things by which the nuisance was being maintained, extended to all parts of the premises used for the unlawful purpose. Cf. *Sayers* v. *United States,* 2 F. (2d) 146; *Kirvin* v. *United States, supra; United States* v. *Kirschenblatt, supra.* The bills for gas, electric light, water and telephone services disclosed items of expense; they were convenient, if not in fact necessary, for the keeping of the accounts; and, as they were so closely related to the business, it is not unreasonable to consider them as used to carry it on. It follows that the ledger and bills were lawfully seized as an incident of the arrest.

*Judgment affirmed.*

