## NED BANKS V. THE STATE.

No. 12315.  Delivered February 6, 1929.
Rehearing denied March 6, 1929.

The opinion states the case.

*F. O. Fuller* of Houston, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction for manufacturing intoxicating liquor; punishment, two years in the penitentiary.

A search of appellant's dwelling house resulted in the finding of a still in operation, and a quantity of whisky in bottles and other containers. The affidavit for search warrant to search said private residence was fatally defective, in that same nowhere stated in words or substance that such residence was a place where *intoxicating liquor was being sold or manufactured.* This is necessary under the plain language of Art. 691 P. C., which states that "No warrant shall be issued to search a private dwelling occupied as such, unless * * * the affidavit shows * * * such residence to be a place where intoxicating liquor is *sold* or *manufactured* in violation of the terms of this act." The affidavit in this case states that there is in the residence of Ned Banks "One liquor still—coils—mash and whisky," which is being used as a means of violating the liquor laws. The liquor laws, so-called, of this State may be violated in various ways other than by the sale or manufacture of intoxicating liquor. The failure of the affidavit for search warrant to search the private residence of the appellant, to state therein that intoxicating liquor was being sold or manufactured in said dwelling, rendered said affidavit insufficient, and also makes invalid the warrant issued thereon, and, if no other reason for its admission existed, would compel the rejection of the testimony of what was found by the officers in their search of said residence.

However it is abundantly shown that when the officers approached the residence of appellant, and before they entered same, they observed him engaged in the perpetration of a felony, which being within the view of said officers justified them in arresting him and searching said house. Mr. Patrick testified as follows:

"From where I was at the back of the house I could see in the house before I ever entered it. I could see in the house through a crack at the back door. I was on the outside of the house at that time and Mr. E. L. Everitt was around in front. * * * I saw in there a pipe and a bucket hanging on the end of it and whisky drip-

ping out; the still was on the cook stove. The defendant was sitting in the room—in the front room."

Mr. Everitt testified:

"I could see inside of the house from where I was on the outside. I could see him standing up in front of the dresser walking backwards and forwards from one room to another; sometimes he would come out of the kitchen into the bed room and go backwards and forwards from the kitchen. He was walking to a dresser in the front room.

"With reference to what, if anything, was on the dresser and what he was doing when he approached the dresser, well, he seemed the best I could see through a very small crack in the door—I saw bottles sitting on the dresser; it was half pint and pint bottles; they had whisky in them. (Answering the defendant's counsel) The way I could tell it was whisky was it looked red; it was bottles with something red in them.

"I said I afterwards entered that front door and when I entered the front door I found whisky on the dresser; a still was found in the kitchen; and as to whether the still was in operation, it was dripping whisky; he was catching it in a ten pound lard bucket; there was a fire under it. I do not know how much whisky I found there, it was five or six half pints and pints; it was on the dresser."

One of said officers was at the back door, the other at the front when they saw what has been detailed. One of them had walked on the gallery of the house, the other stood by the door on the outside. Neither officer had been guilty of any unlawful act. In Steverson v. State, 2 S. W. (2d) 453, we said:

"If without unlawful acts on their part things described in article 690, P. C., came to view of the officers, from which it was apparent that a felony was being committed in their presence, then a seizure without a warrant of the things being used to violate the law would be authorized. Under proper circumstances, this course is authorized by article 690, P. C., article 212 C. C. P., and has been sanctioned under the decisions of this and the Supreme Court of the United States in many cases. See Agnello v. United States, 269 U. S. 30, 46 S. Ct. 4, 70 L. Ed. 148, 51 A. L. R. 409; Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790; Marron v. United States, 48 S. Ct. 74, 72 L. Ed. —; Hodge v. State, 107 Tex. Cr. R. 579, 298 S. W. 573."

Agnello v. United States, 269 U. S. 30, is quoted in Moore v. State, 294 S. W. Rep. 550, as supporting the same rule. Other au-

thorities might be cited. We are of opinion that the evidence was properly received, and that no error appears in any matter complained of in the three bills of exception in the record. The testimony amply supports the verdict and judgment.

The judgment will be affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In his motion for rehearing appellant argues that the acts of the officers were unauthorized and the search made by them unreasonable and unwarranted and in violation of the provisions of the Constitution. He cites no authorities supporting such contention. In addition to Articles 691 P. C. and 212 C. C. P. and the cases cited in our original opinion we refer to the following authorities which also directly support the conclusion announced. Hodge v. State, 107 Tex. Cr. R. 579, 298 S. W. 573; Greenwood v. State, 9 S. W. (2d) 352; Melton v. State, 10 S. W. (2d) 384.

The motion for rehearing is overruled.

*Overruled.*