Edward William **PORTER**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 19146.

United States Court of Appeals
Ninth Circuit.

Aug. 6, 1964.

Rehearing Denied Oct. 12, 1964.

**603**

Jerry Sullivan, Sullivan & Glenn, Phoenix, Ariz., for appellant.

C. A. Muecke, U. S. Atty., Henry L. Zalut, Asst. U. S. Atty., Phoenix, Ariz., for appellee.

Before MERRILL, Circuit Judge, MADDEN, Judge of the Court of Claims, and DUNIWAY, Circuit Judge.

MADDEN, Judge.

This is an appeal from a judgment of the United States District Court for the District of Arizona. The appellant Porter, after a jury trial, was adjudged guilty of two violations of Section 5851 of Title 26, United States Code. The violations were: (1) the unlawful possession of a sawed-off shotgun which had not been duly transferred to the defendant in pursuance of a written order from the defendant on an application form issued for that purpose by the Secretary of the Treasury or his delegate, as required by 26 U.S.Code § 5814, and (2) the unlawful possession of a firearm, to wit: one sawed-off shotgun, * * * said firearm not having been registered as required by 26 U.S.Code § 5841.

The sawed-off shotgun, the possession of which was the basis for each of the two convictions, was taken from the appellant's automobile in a search of his automobile pursuant to a search warrant.

In this appeal he does not contend that he was not in possession of the shotgun, nor does he contend that his possession was not a violation of the cited statutes. His assignment of error is that the district court should have suppressed the evidence, the shotgun, on the basis of which he was convicted, and should have ordered the police officers who had seized it to return it to him. The appellant, before his trial, had made a motion to the trial court to suppress this evidence and to return the shotgun to the appellant, which motion the trial court had denied. If the motion had been granted, the appellant could not have been convicted, since the gun, and its having been found in the appellant's possession, was the principal evidence against him.

We now consider the reasons advanced by the appellant in the trial court and in this appeal, for the suppression of the evidence. The appellant says:

"(a) The trial court erred in not finding the affidavit on the basis of which the search warrant was issued insufficient on its face.

"(b) The trial court erred in not suppressing the evidence on the ground that said evidence was illegally seized."

We first discuss appellant's point (a). The officers who searched the appellant's automobile and found the shotgun had a search warrant issued by a United States Commissioner, one of whose functions is to issue such warrants in proper cases. The appellant says that the Commissioner did not have authority to issue the search warrant which he issued in this case, because the requirements of the Fourth Amendment of the Constitution of the United States were not complied with. The Fourth Amendment says:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to

be searched, and the persons or things to be seized."

The "oath or affirmation" which persuaded the United States Commissioner that there was probable cause for issuing the warrant was an affidavit presented on May 15, 1963, to the Commissioner by Special Agent Joseph R. Pyne of the Federal Bureau of Investigation. The affidavit requested a warrant to search a 1960 Oldsmobile convertible bearing 1963 Louisiana License 869–460, located at a named location. It stated that Pyne had reason to believe that a gun, .25 or .32 caliber, a cap, baseball or golf type, and a sport coat, gray in color, which were considered instrumentalities of a crime of bank robbery which was perpetrated on April 2, 1963, at the First National Bank of Arizona, 15th Street and McDowell Branch, were in the automobile. It stated that the facts tending to establish the foregoing grounds for the issuance of a warrant were:

"1. Above described items were allegedly used and worn by bank robber.

"2. Victim teller, Terry Lee Ford, identified Porter as person who perpetrated the robbery.

"3. Above described items were not in possession of Porter when arrested.

"4. Above described vehicle is allegedly property of Porter and registered in name of William Edwards.

"5. Porter advised Special Agent Walter E. Peters of the F.B.I. that the above described car is his property."

█ The appellant says that the Commissioner should have refused to issue the search warrant because Pyne's affidavit did not show probable cause for believing that the articles listed in it would be found in the described automobile. We think that, in the circumstances, the affidavit was sufficient. It disclosed that the automobile to be searched belonged to the person who had been identified as the robber by the bank teller who had faced the robber; that the automobile had been registered in another state under a fictitious name; that the gun and the clothing sought were not on the person of the owner of the automobile when he had been arrested for an offense other than the bank robbery, on the day preceding the presentation of the affidavit.

The identification of the owner of the automobile as the bank robber was evidence of the highest importance. Having that important break in the direction of the solution of an armed robbery, it was, of course, the high duty of the F.B.I. to take every legitimate step to confirm or rebut the identification. They had information from the teller that the robber wore the listed items of clothing. If those items could be found in the possession of the one who had been identified as the robber, that would be an important step toward the solution of the case. When that person had been arrested on another charge, he had not been wearing the clothing nor carrying the gun which the officers now were looking for. It would seem that the most promising place to look for these objects, considering the fact that the suspect was driving an automobile with a foreign license, which he had registered under an assumed name, would be in the automobile. If he had been a person settled in the community, there might well have been more promising places to look for the objects in question. In the circumstances, we think the F.B.I. agent had probable cause to apply for the warrant, and made an adequate statement to that effect in his affidavit.

█ We have no inclination to study the affidavit of a police officer, applying for a warrant, as if it were a pleading prepared by counsel in a lawsuit. The policeman makes his statement in his own unprofessional language, and the magistrate determines whether the substance of it shows probable cause for the search. The standard applied by the magistrate is not that of certainty that the objects sought will be found as a result of the search. In the comparable situation involving the question

of reasonable cause for a search, in that case without a search warrant, the Supreme Court said, in Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879, that where

> " 'the facts and circumstances within their [the officers] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed"

there is reasonable cause.[1] The existence of probable cause does not require that the officers possess legal evidence sufficient to convict. Washington v. United States, 92 U.S.App.D.C. 31, 202 F.2d 214.

■ At the same time that the F.B.I. agent applied for the warrant to search the 1960 Oldsmobile automobile, he also applied for a warrant to search a 1959 Rambler automobile, said by the appellant to have been his property, but also registered in Louisiana in the name of a woman said by the appellant to be his wife. The appellant urges that the application for this second warrant is an indication that the search of each of the automobiles would be an exploratory search, comparable to a search pursuant to an historically disreputable "general warrant," and would therefore be unconstitutional. A warrant to search for three named and described articles, a gun, a cap and a coat is in no sense a general warrant. As to the significance of the fact that two warrants were issued, one for the Oldsmobile and the other for the Rambler, surely the fact that a suspect has two automobiles, or two residences, does not mean that neither one of them can be searched, because the suspect may have concealed the wanted evidence in the other one. And particularly in the case of two automobiles, both having foreign registration, it might be imprudent for the police to risk the pos-

sibility that the one which contained the evidence would be driven beyond reach while the other was being searched.

■ It is important to remember that the search here involved was not a search made by the police on their own initiative and authority. In some circumstances such a search would, of course, be lawful. But the submission, by the police, to a judicial officer, a magistrate, of their reasons for wanting to conduct a search, is usually necessary and is highly significant. A search which a United States commissioner has authorized does not smack of Gestapo tactics or unlawful assumption of authority by the police. A court which conducts subsequent proceedings in a case has a duty to respect the judgment of the magistrate and to assume, until the contrary is convincingly demonstrated, that he has competently performed his important duty.

We quote at length from the opinion of Mr. Justice Goldberg in the June 15, 1964 decision of the Supreme Court of the United States in the case of Aguilar v. State of Texas, 84 S.Ct. 1509, 12 L.Ed. 2d 723:

> "An evaluation of the constitutionality of a search warrant should begin with the rule that 'the informed and deliberate determinations of magistrates empowered to issue warrants * * * are to be preferred over the hurried action of officers * * * who may happen to make arrests.' " United States v. Lefkowitz, 285 U.S. 452, 464, 52 S. Ct. 420, 423, 76 L.Ed. 877. The reasons for this rule go to the foundations of the Fourth Amendment. A contrary rule "that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the dis-

---

1. See Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777, in which the court recognized that probable cause might exist, for the search of an automobile, because of its mobility, in circumstances which would not be probable cause for the search of a house.

cretion of police officers." Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436. Under such a rule "resort to [warrants] would ultimately be discouraged." Jones v. United States, 362 U.S. 257, 270, 80 S.Ct. 725, 736, 4 L.Ed.2d 697. Thus, when a search is based upon a magistrate's, rather than a police officer's, determination of probable cause, the reviewing courts will accept evidence of a less "judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant," ibid., and will sustain the judicial determination so long as "there was substantial basis for [the magistrate] to conclude that narcotics were probably present * * *." Id., 362 U.S. at 271, 80 S.Ct. at 736. As so well stated by Mr. Justice Jackson:

"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." Johnson v. United States, supra, 333 U.S. at 13-14, 68 S.Ct. at 368.

We conclude that the search warrant was valid.

We now consider the appellant's claim that, even if the search warrant was valid, the seizure of the sawed-off shotgun discovered in the search was unlawful, and that, therefore, it should not have been admitted in evidence but should have been returned to the appellant. In order to make the discussion of this question intelligible, it is necessary to narrate briefly the rest of the facts of the case.

On May 14, 1963, at about 10:00 a. m., the appellant Porter was stopped by an Arizona Highway patrolman, on a public highway, some two miles west of Superior, Arizona. This was done in a routine traffic check. The appellant was driving the 1960 Oldsmobile with the Louisiana license tags, hereinbefore mentioned. The appellant identified himself as Bill Edwards. He could not produce either a driver's license or evidence of the registration of the automobile, and he was arrested. The patrolman caused the automobile to be towed to Superior and placed in the garage of the Arnold Motor Company. A search was made of appellant's person, on which nothing significant was found. The automobile was not searched. It was stored and locked.

The appellant was taken before a magistrate in Superior, was charged with driving without a license, and a bond of $10.00 was set. The appellant telephoned his wife, who was in Phoenix, Arizona. She came to Superior in their 1959 Rambler, hereinbefore referred to. Later that day the appellant's correct identity was learned. He was transported to Phoenix which was some 65 miles distant, and lodged in the county jail. On the next morning, May 15, he was placed in a police lineup, and the bank teller who had faced the robber in the bank holdup of April 2, identified him as the robber, and described the cap and coat worn by the robber and the gun which he had used. The appellant told an F.B.I. officer that the Rambler automobile, referred to above, was his.

Another F.B.I. agent, Mr. Pyne, was present at the lineup. He submitted the affidavits hereinabove described, to the United States Commissioner, and the two search warrants were issued. F.B.I. Agent Grady proceeded, with the warrant for the search of the Oldsmobile, to Superior where that automobile was stored. He and the Arizona Highway patrolman who had arrested the appellant on the preceding morning caused the garage keeper to unlock the Oldsmobile, and proceeded with the search. In the trunk of the car they found a small suitcase, and in it they found a 12 gauge sawed-off shotgun and a .38 Colt revolver. F.B.I. Agent Grady took possession of these ob-

jects. The search did not discover any of the objects named in the search warrant, and the return, attached to the warrant, contained the notation "none" under the heading "The following is an inventory of property taken pursuant to the warrant."

As a result of the discovery and seizure of the sawed-off shotgun, the appellant was indicted for the violations of federal statutes referred to at the beginning of this opinion. Before trial the defendant, as we have seen, made a motion to suppress the evidence, the shotgun, and to require it to be returned to him. As we have seen, the motion was denied, the appellant was tried, the shotgun and the circumstances of its discovery were entered in evidence, the jury found the defendant guilty, and judgment was entered on the verdict.

The appellant urges that, because the search warrant did not list the shotgun as an item to be searched for, the officers, when they discovered it, should have ignored it and left it where it was, in the possession of the appellant. If they had done so, and if no further steps had been taken as a result of what the officers had seen, the appellant would not have been indicted for, or convicted of, the unlawful possession of a sawed-off shotgun.

It may be that if an officer, in executing a search warrant directed to a house or an automobile and describing certain things to be searched for, discovers in his search other things of an intrinsically innocent nature but which have been reported to the police as having been burglarized, he would have to obtain another warrant before he could lawfully seize those other things. But a sawed-off shotgun in private hands is not an intrinsically innocent object. The possession of it is a serious crime, except under extraordinary circumstances. If the appellant had been present when the shotgun was discovered, the officers' duty would have been to immediately arrest him for the indicated crime committed in their presence, and to take custody of the object which was the subject of the crime. To paraphrase the language hereinbefore quoted from Brinegar v. United States, the discovery of the sawed-off shotgun would have warranted officers of reasonable caution in the belief that an offense was being committed. The fact that the appellant was not personally present did not mean that he was not in possession of the shotgun. One's possession, for either legal or practical purposes, does not depend upon his personal presence.

We have said that the commission of the crime of illegal possession of this lethal weapon was strongly indicated when the officers discovered and seized it. It was in the possession of a person who had been identified by a responsible witness as a bank robber, who registered his automobile under a fictitious name, who gave a fictitious name to a highway patrolman in a routine highway check. It would have been sheer fantasy on the part of the officers to have supposed that such a person would have registered a sawed-off shotgun with federal authorities. The Constitution does not require law enforcement officers to play make-believe. What the officers discovered, in their lawful search pursuant to a valid warrant, was reasonably believed by them to be contraband, and it was their duty to seize it.

In Harris v. United States, 331 U.S. 145, 154, 67 S.Ct. 1098, 1103, 91 L.Ed. 1399 the Supreme Court said:

"This Court has frequently recognized the distinction between merely evidentiary materials, on the one hand, which may not be seized either under the authority of a search warrant or during the course of a search incident to arrest, and on the other hand, those objects which may validly be seized including the instrumentalities and means by which a crime is committed, the fruits of crime such as stolen property, weapons by which escape of the person arrested might be effected, and property the possession of which is a crime."

The Harris decision has been cited and followed in numerous cases. Recent ex-

**608**

amples are United States v. Eisner, 297 F.2d 595, 597, C.A. 6; Johnson v. United States, 110 U.S.App.D.C. 351, 293 F.2d 539.

The appellant relies heavily upon the case of Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231. In that case the government argued that a warrant to search for intoxicating liquors and articles used in their manufacture authorized the seizure of gas, electric, water and telephone service bills. The court said that the seizure of these articles was not authorized by the warrant, but held that their seizure was authorized as an incident to the arrest of a person who was observed by the officers to be operating an establishment for the illegal sale of liquor. In the instant case the government does not justify the seizure of the shotgun as being authorized by the warrant. The warrant justified the officers in searching the automobile. The discovery, in the course of the lawful search, of the presumptively contraband object, justified its seizure.

The judgment of the District Court is affirmed.