**UNITED STATES of America**
v.
**Norman Rolfe HARRISON.**
**Crim. No. 289–70.**

United States District Court,
D. New Jersey.
Nov. 10, 1970.

Robert W. Lewandowski, New Brunswick, N. J., for defendant.

Frederick Lacey, U. S. Atty., Roger Steffens, Asst. U. S. Atty., for plaintiff.

OPINION AND ORDER

CLARY, District Judge.

The defendant in the above case has filed a motion for suppression of evidence as being the fruit of an alleged illegal search.

The defendant is charged in a two-count indictment with the possession of firearms in violation of the National Firearms Registration and Transfer Act, 26 U.S.C. §§ 5841, 5861, and 5871.

On May 22, 1970, the Metuchen Police Department made application before a County Court Judge for a search warrant covering the premises occupied by defendant. After a hearing held by the

Court, at which testimony was taken, a warrant was issued covering blank checks stolen from one James Wells, a tape deck (recorder), a cigar box, and a television, allegedly purchased by defendant with said checks, and a football jersey allegedly worn by defendant when he is said to have made the purchases.

Early that evening, the police armed with the search warrant and apparently an arrest warrant on a charge of breaking and entering, executed the search. Upon searching defendant's apartment, the police were unable to locate any of the articles named in the warrant. They did, however, find other stolen checks, and during a search of a closet, they located a sawed-off shotgun, and a pipe bomb. The officers seized the shotgun and called an Army Bomb Disposal Unit to disarm the bomb.

Defendant first contends that the search warrant was invalid as the facts set forth were inadequate to authorize the issuance of a search warrant.

■ At the hearing before the State Court, Lieutenant Reeder of the Metuchen Police Department testified that a sales clerk identified the defendant from among a group of pictures as being the purchaser who had passed one of the Wells' checks. She and the clerks at the other stores where the checks were passed identified the purchaser as wearing a blue jersey with white numerals.

From these and other facts recorded at the application hearing, I am of the opinion that the State Court took adequate precautions and received adequate evidence to support the issuance of a search warrant.

Defendant secondly contends that the warrant being executable "at any time" was invalid under the above stated facts.

In testimony before this Court, the police officers stated that they executed the warrant at approximately 8:30 P.M. They also testified that the lighting was sufficient to recognize the facial features of the defendant, and for the defendant to read the warrant.

Decisional law in this area reveals that the exact moment of sunrise and sunset is not controlling. See 26 A.L.R. 3d 951, 975 (1969). Federal decisions have sustained searches as long as twenty minutes after sundown. Pugliese v. United States, 343 F.2d 837 (1st Cir. 1965), United States v. Gosser, 339 F.2d 102 (6th Cir. 1964), and United States v. Woodson, 303 F.2d 49 (6th Cir. 1962).

■ Finding that the warrant was executed while sufficient daylight remained, the question of whether the issuing judge was warranted in permitting a search "at any time", need not be considered. Johnson v. United States, 46 F.2d 7 (6th Cir. 1931), United States v. Fitzmaurice, 45 F.2d 133 (2nd Cir. 1930), and United States v. Callahan, 17 F.2d 937 (M.D.Pa.1927).

Defendant's last contention is that since the articles seized were not described in the warrant, they must be suppressed.

Rule 41(c) of the Federal Rules of Criminal Procedure requires that a search warrant specify the property to be searched for. Section (e) of Rule 41 provides that a District Court may suppress, upon defendant's motion, evidence that "the property seized is not that described in the warrant."

The basic decisional law in this area was set forth by Marron v. United States, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927). There, the Court ruled that:

"The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.

And the Congress in enacting the laws governing the issue and execution of this search warrant was diligent to limit seizures to things particularly described. * * *"

Three limited exceptions to the rule announced in Marron have been created.

The first exception provides for the lawful seizure and admittance into evidence of the items which are instrumentalities of the same crime. In Johnson v. United States, 110 U.S.App.D.C. 351, 293 F.2d 539, cert. den. 375 U.S. 888, 84 S.Ct. 167, 11 L.Ed.2d 118 (1961), Judge Burger wrote that:

"An officer engaged in a lawful search is not confined to seizing only those items described in the warrant, especially where the unlisted items seized are instrumentalities of the crime. The Fourth Amendment provides that the warrant must particularly describe the 'things to be seized.' But it is well established that given a lawful search some things may be seized in connection therewith which are not described in the warrant * * *."

See also Gurleski v. United States, 405 F.2d 253 (5th Cir. 1969), United States v. Alloway, 397 F.2d 105 (6th Cir. 1963), Seymour v. United States, 369 F.2d 825 (10th Cir. 1966), cert. den. 386 U.S. 987, 87 S.Ct. 1297, 18 L.Ed.2d 239, and Porter v. United States, 335 F.2d 602 (9th Cir. 1964).

In Porter, supra, a sawed-off shotgun was declared an instrumentality of an armed robbery. There are, however, no cases in which a sawed-off shotgun or a pipe bomb have been declared to be instrumentalities of the crimes of passing bad checks, or even breaking and entering. Therefore, neither item can be admitted under this exception.

The second possible exception is that of a search incident to a lawful arrest.

■ During the testimony received at the hearing on this issue, it was revealed that the local police also possessed an arrest warrant charging the defendant with breaking and entering. This warrant was never mentioned in either brief, nor was any evidence introduced as to the probable cause on which it was issued. However, the existence or the sufficiency of such a warrant is immaterial here. The police officers testified that defendant was placed under arrest and arrested while on his front porch. Under the definition set forth in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), it is impossible to imagine that defendant could have been in "immediate control" of items in a closet on the second floor of the duplex. Nor can the Government claim that they validly arrested defendant as a result of their search and then validate the search as incident to the arrest.

Therefore, neither item seized is admissible under this exception.

Neither exception discussed above is affected by the fact that the search was carried out by local police. There is no lessening of the Constitutional requirements. Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949) and Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

The exact bounds of the last exception to Marron has not at this time been fully evolved. Its basis originates in dicta in McDonald v. United States, 335 U.S. 451, 459, 69 S.Ct. 191, 195, 93 L.Ed. 153 (1948).

In discussing searches without warrants, the Court stated:

" * * * Whether there is reasonable necessity for a search without waiting to obtain a warrant certainly depends somewhat upon the gravity of the offense thought to be in progress as well as the hazard of the methods of attempting to reach it."

"Hazards" was defined as "endangering life or limb of the peace and good order of the community."

This concept was further defined in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967). That case provided that:

" * * * [W]e cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in

891

situations where they may lack probable cause for arrest."

█ In this case, having ruled that the search warrant was properly issued and executed, it follows that the police officers were legally on defendant's premises. It was also reasonable for them to search the living room closet as a possible hiding place for the television and tape deck named in the warrant. But having discovered a sawed-off shotgun (broken open), there existed no hazard or emergency which should relieve the officers of the duty of complying with *Marron*, supra.

The case of United States v. Coots, 196 F.Supp. 775 (Tenn.1961) presented an identical situation. The Court there, and I think properly, excluded the sawed-off shotgun from evidence.

The pipe bomb, however, presents a different question. At the time the police discovered the pipe bomb, they were aware that, including themselves, there were approximately ten people in the building. As a result, they did not disturb the bomb. They immediately called for an Army Bomb Disposal Unit.

Being faced with an extremely hazardous and unstable situation, the police officers acted reasonably. To require them to return to the Judge for another warrant would be unreasonable, as time should be considered as of the essence when dealing with an explosive device, the stability of which is unknown.

I am, therefore, of the opinion that the pipe bomb should not be excluded.

ORDER

And now, to wit, this 10 day of November, 1970, for the reasons set forth in the foregoing Opinion, it is ordered, adjudged and decreed that defendant's motion for the suppression of the sawed-off shotgun is granted.

It is further ordered, adjudged and decreed that defendant's motion for the suppression of the pipe bomb is hereby denied.