**UNITED STATES of America,**
**Plaintiff,**

v.

**Robert Ford HAMILTON, Defendant.**

**Crim. A. No. 2113.**

United States District Court,
D. Delaware.

July 21, 1971.

Norman Levine, Asst. U. S. Atty., Wilmington, Del., for plaintiff.

Sotiere S. Kapsalis, Wilmington, Del., for defendant.

## MEMORANDUM OPINION AND ORDER

LATCHUM, District Judge.

The defendant, Robert Ford Hamilton ("Hamilton"), stands indicted in this

Court for having had in his possession on March 13, 1971 a sawed-off shotgun [1] which had not been registered to him in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. § 5861(d). Hamilton has moved, pursuant to Rule 41(e), F.R.Crim.P., to suppress the use of the sawed-off shotgun as evidence on the ground that it was illegally seized during a search of his room. The relevant and undisputed facts developed at the suppression hearings are as follows:

On March 13, 1971, upon the joint affidavit of Sergeant Lawrence H. Curtis and Detective Warren Hopkins of the Wilmington Bureau of Police, Judge Fraczkowski of the Municipal Court of the City of Wilmington issued a search warrant authorizing the police officers (1) to search Hamilton's person and his living quarters at 1002 West 7th Street in Wilmington and (2) to seize

"(a) papers, articles or things which are the instruments of a criminal offense and/or designed and/or adapted and/or to be adapted to be used in a criminal perpetration and/or

(b) property obtained in the commission of a crime; and/or

(c) in particular, 1 man's tan colored trench coat, size 36—the coat has a grape stain on its collar and left cuff. 1 tear gas pistol black metal with white grips—it has an eagle stamped on the grips. 1 hypodermic needle with plastic disposable type syringe. 1 red colored case 5″ x 2″. Also the pubic hairs from the person of Robert Ford Hamilton."

Judge Fraczkowski found that probable cause existed to believe that Hamilton and another person had forcibly broken into an apartment at 802 North Harrison Street, Wilmington at about 12:30 p. m. on March 13, 1971, had raped an occupant of that apartment and had stolen the objects particularly described in the search warrant.

At 4:15 p. m. on March 13, 1971 Sergeant Curtis and Detective Hopkins executed the search warrant for the premises at 1002 West 7th Street, Wilmington. They went to that address and showed the search warrant to Mamie Ford, the person who answered the door, who then directed them to the room occupied by Hamilton. Hamilton was not at home.

A search was begun of Hamilton's room for the items described in the search warrant. Shortly after entering the room, Detective Hopkins, looking underneath a clothes wardrobe, noticed a brown attache case which had been pushed under the wardrobe. Upon opening the unlocked attache case he viewed the sawed-off shotgun in question, which had been cut to a length to fit diagonally into the case.

At the time the shotgun was found, both police officers knew Hamilton personally and knew that he had previously been convicted of a felony. Upon examining the gun, they also observed that it carried no serial number markings. At the suppression hearings both officers testified that they knew that 11 Del.C. § 468B makes it a criminal offense for any person who has previously been convicted of a felony, to own, possess or control any firearm capable of firing a missile with sufficient force to cause death or serious bodily injury.[2]

They further testified that they were aware of the fact that all sawed-off shotguns must carry a serial number, either the one affixed by the original manufacturer pursuant to 26 U.S.C. § 5842(a) or one later assigned by the Secretary of the Treasury or his delegate pursuant to 26 U.S.C. § 5842(b), and that under 26 C.F.R. § 179.120(e) such a gun may not be legally registered

---

1. The 12 gauge single barrel sawed-off shotgun has a barrel length of 11¾ inches and an over-all length of 18⅝ inches. See 26 U.S.C. § 5845(a).

2. Such possession would also violate Federal Law, 18 U.S.C. App. § 1202(a).

under the National Firearms Act unless it has a serial number. With these facts in mind the police officers then seized the shotgun. None of the objects particularized in the search warrant were found.

Hamilton does not contend that the search warrant was in any respect invalid. Rather, he contends that the shotgun was illegally seized and must be suppressed as evidence under Rule 41(e) (3), F.R.Crim.P., because it was not property "described in the warrant" and because the gun was completely unrelated to any offense for which the search warrant was issued.

In support of his suppression motion Hamilton principally relies upon the language in Marron v. United States, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927) which reads, "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." However, in spite of the rigidity of the language in *Marron*, the Courts have, nevertheless, carved out several common-sense exceptions to what otherwise would appear to be *Marron's* flat prohibition against seizure of articles not listed on a search warrant. One such exception arises where a police officer has a valid warrant to search a given area for specified objects, and, in the course of the search, inadvertently comes across another article of incriminating character in plain view. In such a case the officer is entitled to seize the incriminating article.

Indeed in Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947) the United States Supreme Court held that a law enforcement agent making a valid search may seize property which is found on the premises being searched but which is the subject matter of a different crime. In that case FBI agents had a warrant to arrest the defendant for mail fraud violations and in the course of a search incident to that arrest discovered incriminating Selective Service documents relating to an entirely different offense. The Court held that the documents discovered were properly subject to seizure, stating, 331 U.S. at 153 and 155, 67 S.Ct. at 1102 and 1103:

> "In the present case the agents were in possession of facts indicating petitioner's probable guilt of the crimes for which the warrants of arrest were issued. The search was not a general exploration but was specifically directed to the means and instrumentalities by which the crimes charged had been committed * * *. [T]he agents conducted their search in good faith for the purpose of discovering the objects specified. * * * Nothing in the agents' conduct was inconsistent with their declared purpose. * * *

> "If entry upon the premises be authorized and the search which follows be valid, there is nothing in the Fourth Amendment which inhibits the seizure by law-enforcement agents of * * * property the possession of which is a crime, even though the officers are not aware that such property is on the premises when the search is initiated."

The reasoning in *Harris*, while specifically relating to searches incident to a lawful arrest, applies with equal force to searches made under the authority of a valid search warrant. The Supreme Court in Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) impliedly considered all searches under lawful authority (either by arrest warrant or search warrant) to be governed by the same limitations.[3]

3. The Court stated the issue under review in Warden, Md. Penitentiary v. Hayden as follows: "We review in this case the validity of the proposition that there is under the Fourth Amendment a 'distinction between merely evidentiary materials,

■ The search must be one directed in good faith toward objects described in the warrant, for the means and instrumentalities by which the crime was committed or for the fruits of the crime charged or for evidence pertaining thereto. It must not be a general exploratory search which the officers conduct in the mere hope that they will discover evidence of some wrongdoing. No suggestion has been made that the search in the present case was too thorough or too long in duration. When Detective Hopkins inadvertently came upon the shotgun he was aware that the gun was property, the possession of which by Hamilton was a crime under both State and Federal law, and that it was therefore subject to seizure.

The Supreme Court reiterated the *Harris* proposition in Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L. Ed.2d 668 (1960) in upholding a search incident to an administrative arrest prior to deportation which resulted in the discovery of incriminating objects leading to the defendant's conviction for espionage. Justice Frankfurter, speaking for the Court, said, 362 U.S. at 238, 80 S.Ct. at 697: "When an article subject to lawful seizure comes into an officer's possession in the course of a lawful search it would be entirely without reason to say that he must return it because it was not one of the things it was his business to look for."

The rationale for this exception has been most recently stated by the Supreme Court in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L. Ed.2d 564 (1971):

"Where, once an otherwise lawful search is in progress, the police inadvertently come upon a piece of evidence, it would often be a needless inconvenience, and sometimes dangerous —to the evidence or to the police

themselves—to require them to ignore it until they have obtained a warrant particularly describing it."

The conclusion reached in this case also finds support in the Supreme Court's endorsement of the "plain view doctrine" in Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). In that case the Court stated, 390 U.S. at 236, 88 S.Ct. at 993: "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."

Based upon these Supreme Court cases a majority of the Federal appellate courts have recognized and applied an exception to the stringent *Marron* rule and upheld the seizure of incriminating articles relating to a different offense when the articles were inadvertently discovered during the course of a search conducted under a valid search warrant. *See* Anglin v. Director, Patuxent Institution, 439 F.2d 1342, 1347–1348 (C.A. 4, 1971); Ludwig v. Wainwright, 434 F.2d 1104, 1105–1106 (C.A. 5, 1970); United States v. Berry, 423 F.2d 142, 144 (C.A. 10, 1970); Gurleski v. United States, 405 F.2d 253, 257–260 (C.A. 5, 1968), cert. den. Smith v. United States, 395 U.S. 977 & 981, 89 S.Ct. 2127, 23 L. Ed.2d 765 (1969), reh. den. 396 U.S. 869, 90 S.Ct. 37, 24 L.Ed.2d 124 (1969); Aron v. United States, 382 F.2d 965, 973–974 (C.A. 8, 1967); Seymour v. United States, 369 F.2d 825, 826–827 (C.A. 10, 1966), cert. den. 386 U.S. 987, 87 S.Ct. 1297, 18 L.Ed.2d 239 (1967); Porter v. United States, 335 F.2d 602, 606–608 (C.A. 9, 1964), cert. den. 379 U.S. 983, 85 S.Ct. 695, 13 L.Ed.2d 574 (1965); United States v. Eisner, 297 F. 2d 595, 597–598 (C.A. 6, 1962), cert. den. 369 U.S. 859, 82 S.Ct. 947, 8 L.Ed. 2d 17 (1962); Johnson v. United States,

on the one hand, which may not be seized either under the authority of a search warrant or during the course of a search incident to arrest, and on the other hand, those objects which may validly be seized including the instrumentalities and means by which a crime is committed, the fruits of crime such as stolen property, weapons by which escape of the person arrested might be effected, and property the possession of which is a crime.'" 387 U.S. at 295–296, 87 S.Ct. at 1644.

110 U.S.App.D.C. 351, 293 F.2d 539, 540 (1961); Kelly v. United States, 197 F.2d 162, 164 (C.A. 5, 1952).

However, in support of his motion to suppress, Hamilton has cited United States v. Coots, 196 F.Supp. 775 (E.D. Tenn.1961) and United States v. Harrison, 319 F.Supp. 888 (D.N.J.1970). In both cases it was held that the seizure of a sawed-off shotgun was illegal because the gun was not described on the warrant which justified the search. This Court, however, finds neither of these cases to be persuasive. The *Coots* case adhered to the strict language of Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927) and distinguished Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947) on the ground that the latter case was concerned only with the scope of a search incident to arrest while the issue was the scope of a search under a search warrant. In this Court's opinion the distinction made is of dubious validity in light of Warden, Md. Penitentiary v. Hayden. *Harrison* relied entirely upon *Coots* for the same proposition.

In addition, there was no indication in *Coots* or *Harrison* that the searching officers in either case had probable cause to believe that the gun seized was in fact contraband. Under Federal law a sawed-off shotgun or other such weapon is not contraband if it has been properly registered to the person possessing it. Therefore, if in *Coots* or *Harrison* the officers conducting the search had come upon a gun not specified on their warrant, they could not have legally seized it absent probable cause to believe it was contraband. Seymour v. United States, 369 F.2d 825, 827 (C.A. 10, 1966), cert. den. 386 U.S. 987, 87 S.Ct. 1297, 18 L.Ed.2d 239 (1967); John Bacall Imports, Ltd. v. United States, 287 F.Supp. 916,

922 (C.D.Cal.1968); cf. United States v. Baldwin, 46 F.R.D. 63, 65 (S.D.N.Y. 1969). Since the officers in the present case had ample probable cause to believe that the sawed-off shotgun in question here was contraband under Federal law, *Coots* and *Harrison* are distinguishable.

■ Applying the controlling law to the facts of the present case it is clear that the seizure of the shotgun was legally permissible. The two officers possessed a lawful search warrant and were entitled to make a search of Hamilton's room for the articles described in the warrant. The search was limited in scope and dimension. Thus, the initial intrusion into the attache case was justified by the valid warrant. When the attache case was opened, the shotgun inadvertently came into plain view of the officer who had a "right to be in the position to have that view" and the gun was known to be subject to seizure. This is so, first, because the sawed-off shotgun, being without a serial number and being in possession of a known previously convicted felon, was contraband property,[4] the possession of which by Hamilton was a crime both under State and Federal law. 11 Del.C. § 468B; 26 U.S.C. § 5861(b), (d) & (i); United States v. Berry, supra, 423 F.2d at 144; Seymour v. United States, supra, 369 F.2d at 827; Porter v. United States, supra, 335 F.2d at 606–608. Secondly, and for the same reasons when Detective Hopkins came upon the shotgun, it was obvious that another crime was being committed in his presence. He was therefore entitled to seize the instrumentality thereof. United States v. Eisner, supra, 297 F.2d at 597; Kelly v. United States, supra, 197 F.2d at 164. Thus, based upon the undisputed facts of this case, the Court concludes that the police officers' actions were constitutionally permissible and the motion to suppress should be denied.

4. Since the shotgun was without a serial number it could not have been registered under the National Firearms Act, 26 C.F.R. § 179.120(e), nor could it have been legally transferred. 26 C.F.R. § 179.98. It thus falls within the definition of a contraband article. See 49 U.S.C. § 781(b) (2).