**William Earl THOMAS**

v.

**Robert L. MAXAM, William M. Scott, Charles F. Royal, of Dallas Police Department.**

**No. CA 3–81–0601–C.**

United States District Court, N.D. Texas, Dallas Division.

May 2, 1983.

William Earl Thomas, pro se.

Joseph G. Werner, First Asst. City Atty., Kent S. Hofmeister, Sam A. Lindsay, Rhonda F. Hunter, Asst. City Attys., Dallas, Tex., for defendants.

## OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

Plaintiff has sued under 42 U.S.C. § 1983 alleging that he was illegally arrested, that

his car and home were illegally searched and certain items illegally seized, that he was threatened and beaten by the Defendants and that this resulted in a coerced confession.

Plaintiff plead guilty to the offenses for which he was arrested in state court. Because of this, the Defendants moved to dismiss under Rule 12(b)(6), F.R.C.P. on the authority of *Tulford v. Klein,* 529 F.2d 377, 381 (5th Cir.1976) and *Courtney v. Reeves,* 635 F.2d 326, 330 (5th Cir.1981). In these cases, the Fifth Circuit held that an action under 42 U.S.C. § 1983 cannot amount to an indirect attempt to overturn a state court conviction. The motion of Defendants was denied. First of all, the Defendants have not shown that the state court ruled on any issue presented in this case so there can be no issue preclusion i.e. collateral estoppel. Also, there is no estoppel by judgment. Plaintiff was charged with a series of armed robberies which of course meant that there were witnesses to the offenses. Even if one were to assume that the arrest, search and seizure and confession were had unconstitutionally, that would have left the assumably damaging testimony of the witnesses. (This was borne out by testimony at trial that Plaintiff was placed in a lineup one and one-half to two hours after his arrest and picked out by witnesses to three or four different cases.) Assumably, the Defendants have not brought forth the state court record because the search and seizure and the confession of Plaintiff were never contested because of the testimony of the eye witnesses that would have been had if pleas of not guilty had been entered and trial been had for the offenses of which Plaintiff was charged.

It is not clear why Plaintiff has chosen to sue these particular Defendants, all City of Dallas, Texas police officers. From the testimony at trial, it is clear that when Plaintiff was arrested, Officers Steve L. Brasher, William M. Scott, Charles F. Royal and Ronnie Brigance were present. After the arrest and the search of Plaintiff's car and apartment, Plaintiff was transported to the Dallas city jail where over the course of a couple of days he was interrogated by these officers and by Officer Robert L. Maxam.

Why only three of the five officers involved were sued is not clear. This is particularly so in light of Plaintiff's less than satisfactory identification of which officer did what. As a matter of fact, Plaintiff's testimony, on the whole, and in particular as to the happenings after he was arrested and taken down to police headquarters is so general and lacking in specificity as to not be very believable. His testimony as to the events surrounding his arrest and the search of his car and apartment were a bit more specific so those events will be discussed where the circumstances surrounding his giving of his statements to the officers will not because his testimony alone as to these circumstances was not sufficient to establish a prima facie case.

Plaintiff was a suspect in a series of armed robberies as his car matched a description of a car used in one of the robberies and his car license plate number was one digit away from the license plate number given by that witness.

Apparently, Officer Brasher was the one who determined that Plaintiff was a suspect in the armed robberies. He determined that a warrant for Plaintiff's arrest was outstanding. So he summoned the other officers to help him effect Plaintiff's arrest. As Plaintiff was a resident in a Dallas Housing Authority apartment, Officer Brasher prevailed upon a D.H.A. security guard to help him look for Plaintiff. As Officer Brasher and the security guard drove towards Plaintiff's apartment, they saw Plaintiff pull into a parking space.

By the time that they stopped, Plaintiff and one other person had gotten out of the car, locked it and were headed toward Plaintiff's apartment. Both Plaintiff and the other person were then arrested. As this was happening the other officers were coming into view.

The only credible evidence is that Plaintiff's car was then searched by Officer Brigance and one other, probably the security guard. As neither of these two are defend-

ants and the Plaintiff has shown no evidence of a conspiracy to violate his rights, this search will not be discussed further.

As there was one more suspect in the armed robberies, Officer Brasher asked Plaintiff if his partner was in the house. Plaintiff told him to go look for himself. So Plaintiff's keys were obtained and Officers Scott, Brigance and Royal searched Plaintiff's apartment for the other suspect.

Plaintiff testified as to various happenings in the apartment, but as he remained outside of the apartment, he did not speak of personal knowledge so his testimony was not competent to prove anything that occurred in the apartment.

But Officers Scott, Brigance and Royal did testify as to what happened in the apartment.

Officer Royal searched the upstairs bedroom with Officer Scott. When Officer Royal opened the closet door, he saw a bag imprinted with the name of one of the stores robbed with cartons of cigarettes sticking out of it. He called over Officer Scott who agreed that it looked like evidence of that robbery as one of the items taken in that robbery was cartons of cigarettes.

Further search also revealed a bag with two pistols in it. From the testimony at trial, it was apparent to the officers that the bag contained weapons when they first saw it.

The third item seized was a suitcase filled with rolls of coins. This was found when Officer Scott looked under the bed in the upstairs bedroom. The suitcase was lying there closed under the bed when Officer Scott decided to pull it out to see what was in it. As he pulled on it, he found it to be heavy; when he opened it, there were the coins. Officer Scott knew that rolls of coins were taken in large quantity during the course of the armed robberies being investigated.

The Supreme Court held in *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), that "a search conducted without a warrant issued upon prob-able cause is" per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.' *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 . . ." It went on to state one of the well settled exceptions is a search conducted pursuant to an arrest.

It is clear under the Constitution that a search by governmental agents is limited by either the terms of the warrant procured from a neutral magistrate or of the permission procured from a person in custody of the premises. *Marron v. United States,* 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927). *Walter v. United States,* 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980).

A third pertinent case is *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1970). The Court in *Coolidge* found that items in "plain view" of a governmental agent that are incriminating in nature may be seized if the discovery is inadvertent.

The Eighth Circuit, in *United States v. Jackson,* 576 F.2d 749 (1978), stated the applicable rule sensibly. That court said at page 753: "The plain view doctrine does not authorize search and seizure of items contained within objects like attache cases, file cabinets, and luggage that are themselves in 'plain view.' " This case partially relied on *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1976). In that case, the Court found the search of a footlocker to be unconstitutional because there was no exigency to search the footlocker.

The Defendants have plead that even if one or more of their actions was unconstitutional, that they are qualifiedly immune from damages.

Last year, the Court set down a test for qualified immunity in objective terms. It said:

We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statu-

tory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* —— U.S. ——, ——, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The Court then expanded on this test at page ——, 102 S.Ct. 2739:

On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful. Until this threshold immunity question is resolved, discovery should not be allowed. If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors.

■ As was stated above, Plaintiff was arrested pursuant to an outstanding warrant and also for investigation of the series of armed robberies. Plaintiff at trial contested the existence of a warrant. The Court finds that the Defendants made a sufficient showing that a warrant was outstanding though they did not have it in hand when Plaintiff was arrested.

So we are left with the seizure of the cigarettes, the guns and the suitcase full of coins.

■ As Plaintiff had given the arresting officers permission to search for another suspect in Plaintiff's apartment, they could check any area large enough for a person to hide in such as bathrooms, closets and under beds. Any items that were plainly in view during this limited search were, of course, seizable.

The only competent testimony before the Court is that the cigarettes and the guns could be readily seen by the officers. Therefore, they were in plain view and their seizure was constitutional.

■ The seizure of the suitcase full of coins is different. Defendant Scott did not testify that he saw anything unusual about the suitcase when it was under the bed to make him think that it might contain contraband. As stated by the cases above, the coins were not in plain view.

It does not appear that the Defendants have contended any other exception to the warrant requirement of the Fourth and Fourteenth Amendments is applicable. In any event, there was no showing at trial of any of the other exceptions listed in *Coolidge.* The search was not incident to Plaintiff's arrest as he was outside of the apartment already handcuffed and in custody when the search took place. Also, no exigent circumstances have been shown to exist after the cigarettes and/or guns were found so as to negate the requirement that a warrant be procured before a further search for contraband be commenced.

So we are left with the question of whether or not Officer Scott should be shielded from liability for his seizure of the suitcase full of coins?

The Court concludes that Officer Scott should not be shielded as the 1976 case of *United States v. Chadwick* should be read to show that Plaintiff had a clearly established right to have a warrant obtained before his closed suitcase could have been searched and it and its contents seized.

Plaintiff did not present any direct evidence as to damages. Because Plaintiff did plead guilty, this evidence, the coins, was never used against him. Therefore, he has not been substantially damaged. But a purely nominal award of some amount such as $100 would have no effect upon the Defendant and would not act as any deterrent to others. Therefore, the Court will award Plaintiff the sum of $100 to be paid to him by the Defendant Scott. The other

Defendants will be awarded judgment in their favor.