### UNITED STATES of America

### v.

### Kenneth GUARINO.

### Cr. Nos. 81–127 B, 82–18 B.

United States District Court,
D. Rhode Island.

Dec. 21, 1984.

---

Edwin J. Gale, Sp. Atty., U.S. Dept. of Justice, Providence, R.I., for the Government.

Harold C. Arcaro, Jr., Providence, R.I., Herald Price Fahringer, New York City, for defendant.

## OPINION

FRANCIS J. BOYLE, Chief Judge.

### PROCEDURAL BACKGROUND

Defendant has moved to suppress as evidence forty-five cartons of documents seized on the premises of Imperial Distributors on February 28, 1978. Defendant was indicted on December 8, 1981 and March 4, 1982, for various income tax offenses. The two indictments had been consolidated for purposes of a single trial.[1] The government and the Defendant requested that this action be stayed pending the outcome of litigation involving the Defendant before the United States District Court for the District of Massachusetts and the United States Court of Appeals for the First Circuit in the action entitled *United States v. Guarino, et al.,* 729 F.2d 864 (1st Cir.1984). *("Guarino-I")* This case before the Circuit Court involved seven consolidated appeals from the conviction of the Defendant and others for transporting obscene materials in interstate commerce, in violation of 18 U.S.C. § 371 and 18 U.S.C. § 1465.

On August 4, 1983, a panel of three judges of the First Circuit affirmed the convictions for transporting obscene materials, with one dissent. The First Circuit granted a hearing en banc and vacated its opinion. On February 28, 1984, the en banc panel of five judges reversed the Defendant's conviction with three judges vot-

ing reversal and two affirmance and remanded the case to the District Court with directions to dismiss the indictment. The Circuit Court found evidence, claimed to be obscene publications, to have been illegally obtained pursuant to a warrant that was an invalid general warrant and which was issued without probable cause. *Guarino, supra* at 870–71. The Solicitor General did not seek a writ of certiorari and on May 15, 1984, the First Circuit Court of Appeals issued its mandate returning that action to the District Court.

Defendant's Motion to Suppress, in this action, seeks to exclude from evidence business records obtained in Rhode Island on the same date as the search and seizure that was at issue in the District of Massachusetts.

### FACTS

On the morning of February 28, 1978, Lawrence Gilligan, Special Agent for the Federal Bureau of Investigation ("FBI"), presented a detailed affidavit to the United States Magistrate in Boston in support of a search warrant for obscene materials allegedly in a panel truck and then being delivered from Imperial Distributors, Inc. ("Imperial"), Defendant's warehouse in Providence, Rhode Island to stores in Boston's Combat Zone. The Gilligan affidavit was accompanied by three magazines which F.B.I. agents had purchased from an "adult book store" in Boston and had traced to a delivery from Defendant's truck. The Magistrate made a finding that the three magazines were obscene. Based on the affidavit and attached magazines, the Magistrate issued an order commanding the F.B.I. to search the Imperial truck "in order to determine whether or not there exists therein obscene materials of the same tenor as [the three obscene magazines]."

---

1. Count I of the first indictment alleges that the Defendant was responsible for the evasion of federal income taxes of the Little Book Shops, Inc. for fiscal year ending September 20, 1975. The second count of the same indictment charges the Defendant with having subscribed to a false corporate income tax return for Little

Book Shops, Inc. for the same fiscal year. The second indictment charged the Defendant with tax evasion and false statement offenses relative to personal income taxes and as an officer of both Little Book Shops, Inc. and Imperial Distributors, Inc.

A search warrant was also issued directing a search of the truck for "... a quantity of obscene materials including books, pamphlets, magazines, newspapers, films and prints." The order and the warrant did not refer to one another.

Upon receiving the warrant at 11:05 a.m., Agent Gilligan telephoned other agents who proceeded to the Combat Zone. The agents arrested the driver of the truck and took the truck to the F.B.I. garage. Sometime before 11:45 a.m., Agent Gilligan arrived at the garage and delivered the warrant to the driver. Gilligan and the other agents then searched the truck and segregated out materials which they found to fit the description of unlawfully obscene material contained in the order. The return of the search warrant states that no property was "taken at this time." That afternoon, at about 5:30 p.m., at the request of the agents, the Boston Magistrate came to the F.B.I. garage, examined the segregated material, and read a second affidavit drawn up by Gilligan. The Magistrate then authorized the seizure of five films and eight additional magazines as obscene.

After the original seizure of the truck of Imperial Distributors in Boston, but before the Boston Magistrate had an opportunity to view the contents of the truck, at about 2:30 p.m. the Rhode Island aspect of this matter began. Special Agent Kavanagh of the F.B.I. made an application to the United States Magistrate in Rhode Island for a search warrant of the premises of Imperial Distributors located in Providence. The warrant was issued at 3:17 p.m. and the agents served the search warrant at the premises of Imperial Distributors, Inc. at 208 Laurel Hill Avenue, Providence, Rhode Island.

The Rhode Island warrant directed the seizure of all business records of Imperial Distributors, Inc. "relating to the interstate production, manufacture, distribution, purchase and dissemination of obscene materials, dating from April 29, 1975 to the present, including but not limited to" books of the corporation and other corporate records, and including records showing ownership of the business and identification of employees "and furthermore, there is being concealed a quantity of obscene materials, including" eleven named magazines and five named films all as described in the affidavit of Edward Kavanagh, which was incorporated in the warrant by reference.

The affidavit of Special Agent Kavanagh made reference to the affidavit of Special Agent Gilligan, filed in support of the initial morning seizure of the Imperial Distributors' truck in Boston. Agent Kavanagh's affidavit stated that "Special Agent Gilligan, Boston Field Office, has advised me that the truck with Rhode Island Commercial Plate 91826 was searched pursuant to a warrant on this date while in Boston, Massachusetts." The Kavanagh affidavit further stated that according to Agent Gilligan "in the truck were" eight listed magazines and three listed films and included a brief statement with respect to the subject matters of each magazine and film presumably supplied by Agent Gilligan. This brief description leaves no doubt that the materials were sexually explicit.

The Kavanagh affidavit also stated that he or another agent had followed the truck which had been seized in Boston from the Imperial Distributors loading dock in Providence where it had received cartons. This affidavit, like the affidavit in the Boston search warrant, asserted as grounds for the search that the items to be seized were evidence of the interstate transportation of obscene materials for sale and distribution in violation of 18 U.S.C. § 1465.

Several aspects of this situation require further characterization. The Government seeks to use business records in this indictment for income tax violations which records were obtained in an effort to seize evidence of transportation of obscene materials in violation of 18 U.S.C. § 1465. The warrant issued by the Rhode Island Magistrate for obscene materials described the obscene material to be the three magazines which were the basis for the morning search warrant issued in Boston and eight magazines and five films found in the truck

in Boston which were not seized until two hours after the Providence search began.[2] The Rhode Island Magistrate did not view the alleged obscene material at any time. The only evidence of the existence of obscene material was what one Special Agent of the F.B.I. in Boston told another Special Agent. The second agent, who made the affidavit submitted to the Rhode Island Magistrate, apparently based his affidavit on information obtained by virtue of a search of the truck's contents made before the Boston Magistrate in the late afternoon after viewing the material, authorized the seizure of them. At about 3:17 p.m., F.B.I. agents executed the Rhode Island search warrant and searched the Imperial warehouse. The agents took all printed material from the offices including business records of various companies run by the Defendant, attorney-client documents, mail, medical and pension files, personal papers, and various publications not listed in the warrant. There is no evidence that the agents made any effort to segregate materials which may not have complied with the warrant description. By approximately 6:30 p.m., F.B.I. agents in Providence had confiscated about forty-five cartons of records from the warehouse.

The Defendant first came under investigation by the Internal Revenue Service ("I.R.S.") in 1976. On or about that time, the I.R.S. subpoenaed Defendant's bank records. Records of the various corporations controlled by the Defendant were seized under the February 28, 1978 warrant. Thereafter grand jury subpoenas were issued to obtain additional business records. The Government has made no effort to prove the nature of the records seized, and when the records were obtained, that is, during the I.R.S. investigation, by virtue of the February 28, 1978 warrant or thereafter by means of grand jury subpoena. The Government now contends that the documents which were seized would have been obtained through the normal progression of the I.R.S. investigation which commenced fourteen months

prior to the F.B.I. search of Defendant's warehouse. The Government also urges that the good faith exception to the exclusionary rule, recently articulated in *United States v. Leon*, —— U.S. ——, 104 U.S. 3405, 82 L.Ed.2d 677 (1984), be applied retroactively.

## THE MOTION TO SUPPRESS

■ The Motion to Suppress seeks the exclusion of business records, which were seized in an effort to secure evidence of the transportation of obscene materials. The validity of the warrant for this seizure must be tested by the Fourth Amendment requirements that "no warrant shall issue except upon probable cause, and particularly describing the place to be searched, and the persons or things to be seized." The probable cause and particularity requirements of the Fourth Amendment must be established to the satisfaction of a neutral and detached magistrate. *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948). In addition, where books or publications as expressions of speech are the object of a search, the applicant for the warrant must meet a more stringent standard of probable cause. *See Marcus v. Search Warrants*, 367 U.S. 717, 731–732, 81 S.Ct. 1708, 1716, 6 L.Ed.2d 1127 (1961). A warrant may not be issued upon the conclusory assertions of a single police officer regarding obscenity without scrutiny by an impartial magistrate of any materials considered by the police officer to be obscene. *Id.* The Constitution requires a prior determination of obscenity in order to protect First Amendment interests and prevent dragnet searches allowing officers to give force to the elusive definition of obscenity. *See id.* at 733, 81 S.Ct. at 1717; *Lee Art Theatre, Inc. v. Virginia*, 392 U.S. 636, 637, 88 S.Ct. 2103, 2104, 20 L.Ed.2d 1313 (1968). The procedure by which a judge or magistrate makes this determination must be "designed to focus searchingly on the question of obscenity." *Marcus, supra*, 367 U.S. at 732, 81 S.Ct. at 1716.

---

**2.** *United States v. Guarino*, 729 F.2d 864, 869 n. 10 (1st Cir.1984).

■ Business records may be afforded less protection than literary materials as they do not stand on the same constitutional footing. *See Stanford v. Texas*, 379 U.S. 476, 485 n. 16, 85 S.Ct. 506, 512 n. 16, 13 L.Ed.2d 431 (1965). Yet, Defendant's business records were sought in connection with a violation of 18 U.S.C. § 1465, an obscenity offense. It was reasonable for the Rhode Island Magistrate to conclude that business books and records would be utilized as instrumentalities in connection with the crime charged. *See United States v. Cortellesso*, 601 F.2d 28, 33 (1st Cir. 1979). Without a finding of obscenity to support probable cause that the underlying crime was being committed, there cannot be probable cause to direct the seizure of the Defendant's business records. The Fourth Circuit has found that, in proving a violation of 18 U.S.C. § 1465, mere probable cause to believe that books or other publications are being transported in interstate commerce is insufficient to support a search and seizure. There must be, in addition, probable cause to believe that books or other publications being so transported are obscene. *United States v. Peisner*, 311 F.2d 94, 101 (4th Cir.1962). The Rhode Island Magistrate relied on Agents Kavanagh and Gilligan's affidavits and did not view the publications alleged to be obscene, which he authorized to be seized in Providence. The Rhode Island Magistrate apparently relied on the Boston Magistrate's finding that three of the listed magazines were obscene. As noted, the search and seizure of records in Providence occurred before the magistrate in Boston ever examined the additional eight magazines and five films listed in Agent Kavanaugh's affidavit presented to the Rhode Island Magistrate and which were included in the Rhode Island search warrant.

In *Lee Art Theatre, Inc. v. Virginia*, 392 U.S. 636, 637, 88 S.Ct. 2103, 2104, 20 L.Ed.2d 1313 (1968), the warrant failed because the justice of the peace issuing it made no inquiry into the factual basis of the officer's conclusions.

■ In passing on the validity of a search warrant, the court may consider only the information brought to the magistrate's attention. *Aguilar v. Texas*, 378 U.S. 108, 109 n. 1, 84 S.Ct. 1509, 1511, 12 L.Ed.2d 723 (1964). And, in viewing only Agent Gilligan's and Agent Kavanagh's affidavits, and lacking the alleged obscene materials themselves, there is no evidence which a neutral and detached magistrate could use as a basis of a finding of obscenity. Therefore, the Rhode Island warrant fails for lack of probable cause that objects related to the suspected criminal activity were to be found at the place to be searched.

■ A second requirement of a valid warrant is that it must particularly describe the things to be seized. The purpose of the particularity requirement in search warrants is to "make general searches under them impossible and [prevent] the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant", *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927). The First Circuit describes the requirements of the Fourth Amendment as a two-part test. First the magistrate must determine, before the warrant issues, that there is reason to believe that contraband will be found on the premises to be searched, and, second, that the warrant explains the method by which the executing agents are to differentiate the contraband material from legitimate material. *United States v. Klein*, 565 F.2d 183, 188 (1st Cir.1977). The Rhode Island warrant directed the seizure of "All business records of Imperial Distributors, Inc. relating to the interstate production, manufacture, distribution, purchase and dissemination of obscene materials ..." and included a lengthy list of various types of business records. The conduct of the officers executing the search demonstrates that they did not consider their authority limited by the search warrant as they seized every piece of written material on the premises. The general description of all Imperial records relating

to "obscene materials" gives no guide to informed discretion and invites the executing officers to make a determination of obscenity. This type of determination by the seizing officers is prohibited. *Marrone v. United States*, 275 U.S. at 196, 48 S.Ct. at 76 (1972). As a consequence of the broad discretion allowed the officers, pension plans, medical insurance forms, and personal materials were seized, as evidence of interstate transportation of obscene materials.

▮ In some cases, generic descriptions of materials to be confiscated are sufficient when circumstances of the offense make an exact description impossible. *E.g., United States v. Cortellesso*, 601 F.2d 28, 32 (1st Cir.1979); *United States v. Spinelli*, 382 F.2d 871, 886 (8th Cir.1967). This principle applies when the class of contraband is easily distinguishable from other legitimate materials that may be on the premises. *Montilla Records of Puerto Rico, Inc. v. Morales*, 575 F.2d 324, 326 (1st Cir.1978). *Cortellesso* is distinguishable from this case because that warrant dealt with the seizure of stolen garments, fungible goods, that were identifiable as a class but could not be described with precision because their tags had been removed. *Cortellesso, supra* at 32. The seizure of obscene materials or business records relating to obscene materials involves important First Amendment concerns and the potential violation of personal rights that were not at issue in *Cortellesso*. The definition of "obscene" cannot be left to the seizing agents. The Rhode Island warrant, therefore, was drawn with an impermissible lack of particularity.

Because the application for the warrant fails to establish probable cause and fails to meet the particularity requirements of the Fourth Amendment, the search and seizure is illegal and use of evidence seized is barred. *Weeks v. United States*, 232 U.S. 383, 398, 34 S.Ct. 341, 346, 58 L.Ed. 652 (1914). Illegally seized information which reconstructs deficient reports of income must be excluded from criminal tax proceedings. *United States v. Four Thousand One Hundred and Seventy One Dollars in the United States Currency*, 200 F.Supp. 28, 31 (1961).

▮ The Government urges that the "good faith" exception to the exclusionary rule, announced in *United States v. Leon*, —— U.S. ——, 104 S.Ct. 3405, 3422, 82 L.Ed.2d 677 (1984), should apply.[3] Under this rule, even if evidence is secured unlawfully, it would be admissible if the seizing officers acted in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid. *Id.* at 3421. The officer's reliance on the magistrate's probable-cause determination must be objectively reasonable. *Id.*

▮ The Government's attempt to validate the search and seizure on the basis of the exception to the exclusionary rule established in the *United States v. Leon, supra* fails for at least two reasons. In *Leon* the court, in part stated: "The exception we recognize today will also not apply in cases where the issuing magistrate wholly abandons his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); in such circumstances, no reasonably well-trained officer should rely on the warrant." *Leon, supra* at 3422.

*Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 considered the validity of a search warrant for obscene material, including films and magazines. Two of the films were initially shown to the magistrate who then after determining them to be obscene, issued a warrant for other copies of the same films and in addition other unnamed items which were obscene. Armed with the warrant and accompanied by the magistrate, the warrant was served and in the following six hours, as the magistrate viewed films and magazines, items were at his direction added to the list of items to be seized. At least 431 reels of film were seized. The

---

**3.** No question has been raised whether *Leon* may be retroactively applied.

Court held that leaving the matter of determining what items were obscene to the discretion of the officials conducting the search based solely on the conclusory statement of the police investigator failed to meet the Fourth Amendment requirement that the warrant particularly describe the thing to be seized. *Id.* at 325. The court further held that the Fourth Amendment does not countenance open-ended warrants to be completed after the seizure. In addition, the court further held that the magistrate had not acted in a "neutral and detached" fashion as a part of or perhaps the leader of the search effort. *Id.* at 326, 99 S.Ct. at 2324.

While the Rhode Island Magistrate did not in this instance travel to the search locus, this differing circumstance is of no consequence. It was unnecessary for him to do so since he effectively authorized the officers to seize not only specific items which they considered to be obscene but also business records which they considered to be "all business records … relating to the interstate production, manufacture, distribution, purchase and dissemination of obscene materials". (underscoring added) It is of course absurd to suggest that although the officials conducting the search may not exercise their judgment as to what is obscene, they may nevertheless determine which records relate to transactions in obscene materials. It matters not that the magistrate might have authorized seizure of the corporate books without the qualification that they be related to transactions in obscene materials. On the one hand he did not do that. On the other hand the materials which were seized were presumably authorized for seizure by the warrant, requiring a precedent determination by the seizing officers that the records indeed did relate to transactions in obscene publication. What might have been is of no present significance.

What places this matter squarely within the *Lo-Ji Sales* doctrine is the undisputed fact that the magistrate was not afforded at any time before the warrant issued an opportunity to view the suggested obscene material, and there was therefore no determination of obscenity by a neutral and detached magistrate. The required judicial role was not at any time exercised.

A second basis for considering these circumstances beyond the scope of the *Leon* "good faith exception" is the requirement that the executing officers have an objectively tested belief that the seizure was reasonable. It is readily apparent from the proceedings in Boston that one aspect of obtaining a search warrant for obscene material is the requirement that the magistrate view the material claimed to be obscene. This is evident from the fact that the initial Boston application was accompanied by copies of magazines and the order which entered providing for the seizure of the truck and examination of the contents which the officers considered to be obscene by the magistrate before their seizure. The principle was clear that the seizure would not take place before the magistrate viewed the material. The Rhode Island Magistrate was not afforded the same opportunity. The Rhode Island Magistrate had only a brief description of the character of the material from which if accepted as true demonstrated the sexually explicit nature of the material. However, the description of all but three of the eleven magazines authorized to be seized and all of the films must have been obtained before the magistrate in Boston authorized the seizure of them in Boston. The officers thus used information gathered from material which they had not then been authorized to seize. The authority came later. The actual seizure of the materials took place hours after the Rhode Island Magistrate issued the warrant. The descriptions furnished the Special Agent Kavanagh were provided as a result of a search of the truck by Boston F.B.I. agents and before the seizure of the materials was authorized.

If, as the *Leon* court ruled, the suppression of materials is intended to deter unlawful police conduct, its application in this instance is thoroughly justified. The officers conduct cannot be viewed as objectively reasonable in light of the known require-

ment that the magistrate first review the material and determine whether or not it was obscene.

 The only means by which the prosecution could remove the taint from the evidence obtained through this search is if they could establish by a preponderance of the evidence that the business records ultimately or inevitably would have been discovered by lawful means, then the records may be admitted under the inevitable discovery doctrine. *See Nix v. Williams,* — U.S. ——, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). The rational of the inevitable discovery doctrine is that society's interest in deterring unlawful police conduct and in having juries receive all probative evidence of a crime is properly balanced by putting the police in the same, not a worse position than they would have been in if no police error or misconduct had occurred. *Id.* at 2511. The rule is aimed more at the unlawful conduct and its deterrence than at the lawful availability or unavailability of the evidence. *United States v. Finucan,* 708 F.2d 838, 842 (1st Cir.1983). If the materials are found initially as a result of the wrongful conduct it is insufficient to show it *could* have been found independently, it must be shown that it *would* have been found. *Finucan, supra* at 843. This standard requires the Government to show that it was actually in the process of summonsing the documents before the illegal seizures. *Id.* The inevitable discovery of the same evidence must be certain in order to fall within this exception. LaFave, Search & Seizure § 11.4 (1978). In *Nix v. Williams, supra,* a systematic search to find a victim's body was underway before the defendant revealed the exact location of the body during an illegal interrogation. The searchers were so close to discovery of the body that following the method of the search they would have undoubtedly discovered it even without the illegal testimony. The court, therefore, admitted testimony regarding where the body was found while excluding evidence that the defendant had revealed its whereabouts.

Defendant's business records, and books and records of corporate activity are readily obtainable by subpoena because they are not protected by the Fifth Amendment. *Wilson v. United States,* 221 U.S. 361, 384, 31 S.Ct. 538, 545, 55 L.Ed. 771 (1911). The Internal Revenue Service had begun its investigation in 1976. The Government subpoenaed bank records and business records pertinent to the Defendant's financial dealings, including business records of corporations with which he was affiliated. The issue now is whether this investigation was sufficiently advanced to have inevitably revealed the documents, and whether the Government had adequate independent information to uncover the business records.

 Analysis of the application of the inevitable discovery exception depends upon a weighing of the facts and a determination of whether the secondary evidence was obtained by an independent source or by official exploitation of the primary illegality. *United States v. Crews,* 445 U.S. 463, 469, 100 S.Ct. 1244, 1248, 63 L.Ed.2d 537 (1980). An independent source is shown when "the chain of causation proceeding from the unlawful conduct has become so attenuated or has been interrupted by some intervening circumstances so as to remove the taint imposed on that evidence by the original illegality." *Id.* at 471, 100 S.Ct. at 1250. In *United States v. Bienvenue,* 632 F.2d 910 (1st Cir.1980), the First Circuit held that the Government would inevitably have discovered evidence of Defendant's trips to Colombia even without supporting evidence from an illegal search. The Government had made an initial effort and had sufficient independent information to continue an investigation of travel agencies prior to the illegal search of Defendant's residence. The scope of their investigation was so defined that the Court could conclude that discovery of the travel records was inevitable. *Id.* at 914.

 The Government here has made a general assertion that the "natural progression" of the I.R.S. investigation would have uncovered those business documents

seized on February 28, 1978. The record fails to indicate, however, that the Government had sufficient knowledge, prior to the illegal search, regarding the various companies apparently controlled by Defendant, to be able to subpoena those particular documents. The First Circuit denied the suppression of tax records where, prior to an illegal search, the I.R.S. had studied a large volume of records and had the advantage of interviews with the Defendant's accountant and many man hours of analytical work. *McGarry v. United States,* 388 F.2d 862, 871 (1st Cir.1967). The court stated, at 871: "It is clear to us that this is not a case where an illegal search has revealed unsuspected data which is sought to be blanketed under a later 'legal' subpoena." (citation omitted).

▆ Once the search is determined to be illegal, the burden is on the Government to prove that the evidence is sufficiently freed from the taint of illegality. *Cf. Harrison v. United States,* 392 U.S. 219, 225, 88 S.Ct. 2008, 2011 (1968).

The Government has supplied no evidence of what tax information it was privy to before the search. Therefore, this Court cannot compare evidence seized and determine whether, in fact, it would have been inexorably obtained. In fact, the Government acknowledges that additional records of corporations controlled by the Defendant, which were not seized under the February 28, 1978 warrant, were properly obtained later by means of grand jury subpoena, after the February 28, 1978 seizure. Additional evidence obtained subsequent to an illegal search must be viewed as an impermissible exploitation of the illegal search. *United States v. Finucan,* 708 F.2d 838, 843 (1st Cir.1983). Not only does the government's actions in summonsing other documents *after* the search cast doubt on the sufficiency of its knowledge prior to the search, but these subsequently—obtained documents are infected by the taint as well.

Thus far, the issues considered relate solely to the validity of the Rhode Island warrant. A reading of the opinion of the Court of Appeals for the First Circuit in *United States v. Guarino,* 729 F.2d 864 (1984) and its determination that the first Boston search warrant was facially defective compels a determination that the Rhode Island warrant is likewise defective. The Court of Appeals at 729 F.2d 869, n. 10 observed:

"... we note that some two hours before the seizure under the second Boston warrant, the truck items were used to obtain a Rhode Island warrant that was immediately exercised."

The use of the information garnered from the unlawful Boston search may not be permitted. In *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 391, 40 S.Ct. 182, 182, 64 L.Ed. 319 (1920) the court (Holmes, J.) stated:

The proposition could not be presented more nakedly. It is that although of course its seizure was an outrage which the Government now regrets, it may study the papers before it returns them, copy them, and then may use the knowledge that it has gained to call upon the owners in a more regular form to produce them; that the protection of the Constitution covers the physical possession but not any advantages that the Government can gain over the object of its pursuit by doing the forbidden act. *Weeks v. United States,* 232 U.S. 383 [34 S.Ct. 341, 58 L.Ed. 652] to be sure, had established that laying the papers directly before the grand jury was unwarranted, but it is taken to mean only that two steps are required instead of one. In our opinion such is not the law. It reduces the Fourth Amendment to a form of words. 232 U.S. 393. The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all.

*See also* 3 Wright, Federal Practice and Procedure: Criminal 2d, § 677.

For the foregoing reasons, Defendant's Motion to Suppress must be granted.

SO ORDERED.