EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* CARMELA MALBERT PILLOT, acusada y apelante.

Número 15440.

*Sometido:* 2 de noviembre de 1953.   *Resuelto:* 30 de diciembre de 1953.

*S. L. Lagarde Garcés,* abogado de la apelante; *Hon. Secretario de Justicia José Trías Monge y Rafael L. Ydrach Yordán, Fiscal Auxiliar del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

El Juez de la antigua Corte Municipal de Puerto Rico, Sección de Guayama, (1) libró en 2 de junio de 1952 una orden

---

(1) Véanse la Ley 432 de 15 de mayo de 1950 (pág. 1127) y la Ley 11 de 24 de julio de 1952 (Sesión Extraordinaria pág. 31).

694

de allanamiento requiriendo a cualquier agente del orden público para que durante las horas del día o de la noche procediera al registro de la casa residencia de Carmela Malbert, que se describe, en busca de ron clandestino sin tener los correspondientes sellos de rentas internas adheridos. Los policías que diligenciaron la orden no encontraron en la casa allanada licor clandestino alguno, pero sí material y enseres destinados a la manipulación de la bolita. En vista de ello, el 7 de julio siguiente el fiscal de distrito formuló acusación contra la Malbert por infracción a la Ley de la Bolita.[2] El 16 del mismo mes compareció la acusada al acto de lectura de la acusación, dió ésta por leída y solicitó un término de 20 días para contestar a la misma, concediéndole el antiguo Tribunal de Distrito de Puerto Rico, Sección de Guayama, con tal fin, hasta el 4 de agosto. A solicitud del fiscal dicho tribunal dejó sin efecto el mismo día—16 de julio—la acusación presentada el día 7, autorizó la radicación de una nueva acusación y señaló la lectura de ésta para el ya referido 4 de agosto. Tal solicitud se debió a que el fiscal se dió cuenta de que la acusación original no había sido presentada en corte abierta y a que quería subsanar el error cometido. Al ser llamado el caso nuevamente para lectura de la acusación y al comparecer la acusada sin representación legal, el tribunal le designó un abogado de oficio, quien una vez más dió por leída la acusación e hizo alegación de inocente en favor de la acusada. Al siguiente día y a petición de ésta, hecha por mediación de otro abogado, se llamó el caso de nuevo, se dejó sin efecto la lectura de la acusación efectuada el día anterior y se radicaron por la acusada en corte abierta dos mociones, una de ellas solicitando del tribunal se declarara sin jurisdicción por haberse presentado originalmente la acusación en cámara y otra sobre supresión de evidencia. Luego de ser discutidas con toda amplitud, dichas mociones fueron declaradas sin lugar, al igual que una moción sobre reconsideración de las resolucio-

[2] Ley núm. 220 de 15 de mayo de 1948, pág. 739.

nes así dictadas. Después de varios incidentes y de suscitarse otras cuestiones de derecho que es innecesario reseñar, se celebró un nuevo juicio en los méritos del caso.([2ª]) Considerada la prueba ofrecida, el tribunal declaró entonces culpable a la acusada y le impuso seis meses de cárcel.

Los siete errores señalados por ella en apelación pueden reducirse a dos, a saber: (1) que el tribunal sentenciador erró al permitir al fiscal dar por radicada como acusación el mismo documento que había dejado sin efecto y que aparece jurado en cámara con fecha 7 de julio; y (2) al declarar sin lugar su moción sobre supresión de evidencia, ya que la declaración jurada que motivó la expedición de la orden de allanamiento, al igual que ésta, hicieron referencia a ron clandestino que no tuviere los sellos de rentas internas adheridos, por lo que resultó ineficaz la orden para ocupar boletos y material de bolita.

■ La acusación contra la apelante fué presentada originalmente en cámara y no en corte abierta, tal cual dispone el artículo 3 del Código de Enjuiciamiento Criminal.([3]) Sin embargo, la actuación del tribunal al permitir al fiscal retirar dicha acusación y radicarla nuevamente en corte abierta se ajustó a derecho. Ello constituía un defecto de forma que podía resultar fatal. Al llamársele la atención al tribunal respecto del mismo, éste tenía plena discreción para actuar en la forma en que lo hizo con el propósito de que se cumplieran mejor los fines de la justicia. *Pueblo* v. *Rodríguez y Quiñones*, 37 D.P.R. 423; *Pueblo* v. *Muñoz*, 57 D.P.R. 218; *Nogueras* v. *Acosta, Juez Municipal*, 49 D.P.R. 856; *Pueblo* v. *De Jesús*, 34 D.P.R. 468. Conforme dijimos en *Pueblo* v.

([2ª]) El juicio se celebró por primera vez el 8 de septiembre de 1952 y la acusada fué hallada culpable. Cinco días más tarde, y antes de dictarse sentencia, se presentó moción de nuevo juicio que fué declarada con lugar.

([3]) El artículo 3 del Código de Enjuiciamiento Criminal dispone en lo pertinente que:

"Todo delito respecto del cual tuviere jurisdicción original la corte de distrito, deberá perseguirse en virtud de acusación presentada por el fiscal en sala de justicia y confirmada con su declaración jurada. . . ."

*Rodríguez*, 44 D.P.R. 578, 582–583, luego de referirnos al artículo 3, supra, "por sus propios términos el precepto ordena que la acusación se presente en corte abierta . . . cuando se lee la acusación al acusado, acto que se realiza en corte abierta, en corte abierta tiene necesariamente que estar la acusación. Fué archivada con el Secretario pero no permaneció en su oficina. Llegó a sesión pública. Si en el momento de leérsele la acusación, el acusado levanta la cuestión, su derecho debe serle reconocido inmediatamente. ¿Cómo? Dándose por presentada por el fiscal allí y entonces, en corte abierta, la acusación, y señalándose día para su lectura, en el que podrá concederse al acusado el tiempo necesario para que la conteste formulando las alegaciones que a su derecho estime pertinentes." Fué esto precisamente lo ocurrido en el caso de autos. Al proceder en la forma en que lo hizo, el tribunal sentenciador evitó que se vulneraran los fines de la justicia.

■■ En lo que al segundo error señalado concierne posiblemente bastaría indicar que según dijimos en *Pueblo* v. *Rodríguez*, 73 D.P.R. 323, 326 ". . . el hecho de que la orden de allanamiento se librara con el propósito de ocupar bebida clandestina en poder del acusado no impedía que al ejecutarse la misma la policía se incautara de cualquier otro material por aquél poseído en violación de la ley" y que ése sigue siendo nuestro criterio. (⁴) Empero, dado el énfasis que pone la acusada en lo dicho por el Tribunal Supremo de los Estados Unidos en *Marron* v. *United States*, 275 U. S. 192, 72 L. ed. 231, al efecto de que:

"El requisito de que las órdenes de allanamiento describan particularmente las cosas que deban ser ocupadas hace imposible

---

(⁴) La Carta Orgánica de Puerto Rico disponía en su artículo 2, párrafo 14 que: "No se expedirá mandamiento de arresto o registro sino por motivo fundado, apoyado con juramento o afirmación, y describiendo particularmente el lugar que ha de registrarse y las personas que han de ser detenidas o las cosas que deben ser embargadas." Esa Carta Orgánica estaba en vigor para la fecha en que ocurrieron los hechos envueltos en este caso.

que a virtud de las mismas se practiquen registros generales e impide la ocupación de una cosa bajo una orden de allanamiento que describa otra," (⁵)

creemos oportuno examinar de nuevo la cuestión.

Lo arriba expuesto constituye la regla general, pero como toda regla la misma tiene su excepción. Tal excepción aparece consignada con claridad meridiana en innumerables casos en la siguiente forma: "sin embargo, un registro efectuado a virtud de la autoridad conferida por una orden de allanamiento no precluye generalmente la incautación legal de materiales o artículos conectados con otro delito que como cuestión de hecho se comete en el lugar allanado y que son descubiertos por los oficiales que diligencian el mismo, . . ."—169 A.L.R. 1424, citando a *Marron* v. *United States*, supra, y otros casos—o dicho en otra forma: "cuando se practica un registro bajo la autoridad de una orden de allanamiento, tanto de acuerdo con los tribunales federales como según otras cortes, la descripción que en la orden de allanamiento se hace de los artículos a ser ocupados limita la autoridad del funcionario que la diligencia a la ocupación de los objetos descritos en la orden de allanamiento e impide la incautación de objetos distintos a los descritos; pero si el oficial que ejecuta la orden descubre la comisión de otro delito en su presencia dentro del lugar allanado a virtud de la autoridad de la orden,

---

(⁵) En el caso de *Marron* v. *United States*, 275 U. S. 192, 72 L. ed. 231, se libró una orden de allanamiento con instrucciones de ocupar las bebidas embriagantes que hubiere en la propiedad allanada. Al diligenciarla, los agentes de la ley ocuparon tales bebidas así como un libro mayor en que figuraban ciertos asientos relacionados con la compraventa de las mismas, e innumerables cuentas. Si bien el tribunal más alto de la nación se expresó en la forma alegada por la apelante, sin embargo la cita que ella hace no es todo cuanto se dijo en el caso, ya que además de lo consignado, al seguir discutiendo la cuestión dicho tribunal se expresó así: "Los agentes de la ley estaban autorizados para arrestar por un delito que se cometía en su presencia . . . Tenían derecho a registrar el lugar contemporáneamente, sin otra orden de allanamiento, en busca de todo aquello que se utilizara en la prosecución de la empresa criminal . . . La autoridad de los agentes para registrar y ocupar las cosas que servían para la comisión del estorbo (*nuisance*) se extendía a todos los recintos de la propiedad utilizados para fines contrarios a la ley. . . ."

la incautación de los materiales o medios utilizados en la comisión del nuevo delito resulta ser legal." 169 A.L.R. 1420. Véanse también *Harris* v. *United States*, 331 U. S. 145; 79 C.J.S. 903, sección 83(*e*). Conforme indicó el ilustre Juez Hand en el caso de *United States* v. *Old Dominion Warehouse*, 10 F.2d 736, 738:

"No podemos imaginarnos que si un agente de la autoridad entra legalmente a una propiedad, fundado en una orden de allanamiento que se limita a ciertos artículos que se describen, él no estaría justificado en incautarse sin orden de allanamiento alguna de otras cosas que pudiera hallar en la propiedad. Tal incautación no dependería de la orden de allanamiento, sino del hecho de que tales artículos son por naturaleza *caput lupi;* ello sería una incautación tan legal como si la propiedad se ocupara de la propia persona arrestada."

El material de bolita en posesión de la acusada constituía un nuevo delito. Los policías no se hallaban ilegalmente dentro de la propiedad allanada—*Pueblo* v. *Barrios*, 72 D.P.R. 171—sino que por el contrario estaban en ella en cumplimiento de una orden legal. Habiendo los policías que ejecutaban la orden de allanamiento penetrado en la casa de la acusada a virtud de una orden de allanamiento librada de acuerdo con la ley, la ocupación de tal material estaba plenamente autorizada.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Sr. Negrón Fernández está conforme con el resultado.

El Juez Asociado Sr. Belaval disintió.