### State v. Gadd
*[Cite as 2 AOA 80]*

*Case No. 11418*
*Montgomery County, (2nd)*
*March 1, 1990*

*R.C. 2951.04.1*

*Lee C. Falke, Prosecuting Attorney for Montgomery County, by Carley J. Ingram, Assistant Prosecuting Attorney, Appellate Division, 41 North Perry Street, Suite 315, Dayton, Ohio, 45402, Attorney for Plaintiff-Appellee.*

*Mary K. C. Soter, 5518 North Main Street, Dayton, Ohio 45415, Attorney for Dependant-Appellant.*

GRADY, J.

Appellant Phillip D. Gadd appeals his conviction of possessing a Schedule II controlled substance, specifically cocaine, a violation of R.C. 2925.11. Before trial Gadd filed a motion to suppress evidence. He also filed an application for treatment in lieu of conviction under R.C. 2951.041. At a hearing the trial court denied both the motion and application. Gadd then pleaded no contest to the charge and was sentenced to one year in the Ohio State Reformatory. Gadd submits two assignments of error for our consideration.

Appellant first contends that the trial court erred in denying his motion to suppress evidence seized by police during an allegedly illegal search. He also sought to suppress incriminating statements made following his arrest. Gadd argues both are fruits of an illegal search and seizure. We conclude that on the facts presented the officer had probable cause to arrest and seize the evidence in connection with arrest and without undue intrusion into a constitutionally protected area. The statements were made after a waiver of rights by Gadd. The trial court properly denied Gadds motion to suppress.

Appellant also argues that the trial court erred in refusing to grant his request for treatment in lieu of conviction as provided in R.C. 2951.041. As we stated in *State v. Williams* (June 16, 1988), Montgomery App. No. 10505, unreported, this statutory provision is discretionary. However, we find that the trial court acted outside the discretion granted by the statute, and will sustain the Appellant's assignment of error.

The couple was unaware of Baker's presence until he was within ten feet. At that point Gadd quickly took his right hand and placed it over the items on the table. Baker walked to the opposite side of the table to face the couple. He informed the couple that he was checking to make sure no illegal activity was occurring and asked Gadd what was under his hand. Gadd did not respond. The testimony varies as to what happened next.

Chief Baker testified that at the time he asked Gadd what was under his right hand he saw a knife, a small packet, and a small amount of white powder on the table, none of which were concealed by Gadd's hand. (Tr. 8). Gadd disputed this version of the facts. He testified that after he refused to reveal what was under his hand

Baker forcibly moved his hand, revealing the contraband. (Tr. 32).

After discovering the drugs and paraphernalia Baker called for assistance and placed Gadd under arrest. Gadd was fully informed of his *Miranda* rights and indicated that he understood them. During questioning Gadd admitted that the white powder was cocaine.

Gadd filed a motion to suppress both the seized contraband and his incriminating statements. He argued that both were fruits of an illegal search. The trial court overruled the motion, finding that Baker had observed Gadd in possession of cocaine-ingesting equipment and a white powdery substance. The trial court concluded Baker had sufficient articulable facts to warrant an investigation. The trial court also refused to suppress Gadd's statements concerning the nature of the white powder, finding that his admission came after he received his *Miranda* warnings.

Before entering a plea, GAdd filed an application for treatment in lieu of conviction. The trial court reviewed the probation department's report, which recommended Gadd for treatment in lieu of conviction. However, the trial court noted that it would grant treatment only in "very special circumstances because I know the probation department can do a better job, or more specifically, cheaper and for your client, he does need treatment and he is good candidate for probation." (Tr. 45).

Following the trial court's refusal to grant treatment in lieu of conviction, Gadd entered a plea of no contest. The trial court found him guilty of drug abuse and sentenced him to one year in the Ohio State Reformatory.

Gadd filed a timely notice of appeal raising two assignments of error.

I

*Facts of the Case*

On July 1, 1989 Huber Heights Police Chief Jerry Baker was on foot patrol in Tom Cloud Park. Baker is an eighteen year veteran of various police departments and has an extensive background in drug enforcement. He knows and recognizes cocaine. Baker was working with a police detail assigned to maintain a high profile in the park during the July 4th weekend.

At approximately 9:00 pm Chief Baker observed Gadd and a female companion sitting alone at a picnic table in an isolated section of the park. The couple drew Baker's attention because of their location away from a large public celebration taking place elsewhere. Gadd and his companion sat to each other, at a slight angle,

with their backs to Baker. Although it was 9:00 pm, visibility was not a problem.

Chief Baker testified that he studied the couple from a distance of about thirty-five feet; his line of sight enabled him to see between the couple to the top of the table. He observed Gadd take out a knife and cut a straw in half. Gadd then withdrew a small packet from his pocket and laid it on the table. Baker testified that, based on his

II.

*Legality of the Search*

Gadd's first assignment of error states:

"The trial court erred in denying defendant-appellant's motion to suppress evidence illegally obtained from him by moving defendant-appellant's hand, without a search warrant granting authority to search, and denying defendant-appellant's motion to suppress any statements made by the defendant-appellant pursuant to said illegal search and seizure."

Warrantless searches are *per se* unreasonable under the Fourth Amendment. *United States* v. *Place* (1983), 462 U. S. 696; *Marron* v. *United Stated* (1927), 275 U. S. 192. Yet, while warrantless searches are presumptively unreasonable, not all warrantless searches are conclusively unreasonable. A warrantless search is presumptively unreasonable whenever the individual subjected to the search possessed a "constitutionally protected reasonable expectation of privacy." *Katz* v. *United States* (1967), 389 U. S. 347 , 360 (Harlan, J. concurring). Thus, wherever a person harbors a *reasonable* expectation of privacy, he is entitled to be free of unreasonable government intrusion, be that on the street or closeted in a home. *Terry* v. *Ohio* (1968), 392 U. S. 1, 9. See also, *Katz, supra*, at 351-352. Whether an individual's privacy expectation is legitimate is determined on case-by-basis.

We find that the warrant and privacy arguments asserted by Gadd are not controlling of the issue before us. Based upon his observations of Gadd, Chief Baker had probable cause to arrest Gadd upon charges of illegal possession or use of drugs and related equipment before Gadd's hand was moved. An exception exists to the warrant requirement when a search is incident to a valid arrest. *Chimel* v. *California* (1969), 395 U. S. 792, 23 L. Ed 2d 685.

An arresting officer may then reasonably search the person and the areas under his control or within his reach, which are not constitutionally protected by reasons of privacy after or in the course of the arrest. The search

of the area of an arrest must be limited to an area "into which an arrestee might reach". 395 U. S., at 763. Gadd had already reached to grasp or conceal the evidence, and a search limited to the area under his hand was necessary to preserve the readily destructible evidence found there. *Cupp* v. *Murphy* (1973), 412 U. S. 291. Thus, whether Gadd moved his hand voluntarily or not, the search was reasonable. For those reasons, we cannot say the search and seizure violated the Fourth Amendment to the Constitution of the United States or the Constitution of Ohio, Section 16, Article I.

Chief Baker testified that after he placed Gadd under arrest he placed him in the custody of Detective Taylor of the Huber Heights Police Department. Detective Taylor testified that he advised Gadd of his "constitutional rights" (Tr. 25) and that Gadd "Said he understood his rights and was willing to talk to me". (Tr. 25). Gadd then admitted that the powdery substance seized from him was cocaine. (Tr. 25). Gadd has not shown that the warning and waiver were inconsistent with the requirements of *Miranda* v. *Arizona* (1966), 384 U. S. 436, and we find no error in failing to suppress statements on that basis.

Appellant's first assignment of error is overruled.

### III.
### *Treatment in Lieu of Conviction*

Appellant's second assignment of error states:

"The court erred in advising defendant that although he was eligible for treatment in lieu of conviction and he did need treatment, that the court was not going to grant treatment in lieu of conviction except for very special circumstances because the probation department can do a better job, 'cheaper'."

R. C. 2951.041 enables a drug offender to receive rehabilitative drug treatment in place of a conviction.

R. C. 2951.041 (A) states:

"(A) If the court has reason to believe that an offender charged with a felony or misdemeanor is a drug dependent person or in danger of becoming a drug dependent person, the court shall, prior to the entry of a plea, accept that offender's request for treatment in lieu of conviction. If the offender requests treatment in lieu of conviction, the court shall stay all criminal proceedings pending the outcome of the hearing to determine whether the offender is a person eligible for treatment in lieu of conviction. At the conclusion of the hearing, the court shall enter its findings and accept the offender's plea."

R. C. 2951.041 (B) establishes the five conditions an offender must meet to be eligible for conviction. This section concludes with the following statement:

"* * * Upon such a finding and where the offender enters a plea of guilty or no contest, *the court may stay all criminal proceedings and order the offender to a period of rehabilitation.*" (emphasis ours)

We addressed the discretionary nature of R. C. 2951.041 in *State v. Williams* (June 16, 1988), Montgomery App. No. 10505. There we stated, "Assuming that the defendant met all of the criteria for treatment in lieu of conviction, the granting of such relief was within the discretion of the trial court." Abuse of discretion occurs when the trial court's attitude is "unreasonable, arbitrary or unconscionable." *State* v. *Adams* (1980) , 62 Ohio St. 2d 151. Without a showing of abuse of discretion we will not disturb the decision of the trial court.

In addressing Defendant-Appellant Gadd's request for treatment in lieu of conviction, on January 30, 1989, the trial court stated (at Tr. 45):

"The court has seen the report from the probation department that your client is eligible for treatment in lieu of conviction. The court is not going to grant those except in very special circumstances because I know the probation department can do a better job, or more specifically, cheaper and for your client, he does need treatment and he is a good candidate for probation. We'll let that happen if you want to insist upon going ahead we can."

Appellant has also filed a transcript of the statements of the trial court on a similar request in *State* v. *Elmore*, 88 CR 1924 and 88 CR 3091, which were made in open court and before Appellant Gadd while he was awaiting plea on January 4, 1989. The transcript states, in part:

"I would say, with regard to treatment in lieu, the court is not going to grant those except in usual circumstances and there is a lot of merit to it. And the reason for that is that the probation department has very little control over the people they have to supervise while they are going through the treatment program and if the defendant is eligible for treatment in lieu of conviction, he will very likely be a good candidate from (sic) probation and the probation officer can do a better job of supervision on people on probation and the court and probation officer can do it supervising people in treatment in lieu of conviction cases."

We just had one where the court put out a

warrant last September and we are just coming up with the guy now and have to go through all of that to bring the guy back before the court and the probation officer could have arrested him and had him if he had been on probation.

If you want to go ahead with it and file a motion for treatment il lieu, the court will consider it on its merits but it is a waste of the tax payer's money and waste of time and the probation officer can do it much more effectively and cheaper.

Ordinarily, we would not consider matters outside the record of a case before us. Following that rule, we shall not employ the trial court's statements in *Elmore* as determinative of Gadd's case. However, as both statements concern the same issue of law and contain similar references to "special circumstances" or "unusual circumstances" in the same fashion, the trial court's statements in *Elmore* may inform us of the trial court's view of its discretion in cases of this kind.

In creating the alternative of Conditional Probation for Drug Treatment the General Assembly has adopted a policy that criminal offenders who meet the criteria of the statute must be considered for treatment. The statute reposes on the court broad discretion to determine in the case of any qualifying individual whether such treatment is appropriate. In addressing that question the trial court must consider the offense, the applicant, the applicant's actual or prospective drug dependency, and the treatment program proposed. It may be that the court views such treatment appropriate only when those factors, taken together, present "special circumstances", and such a view is not an abuse of the broad discretion granted by the statute. However, the court may not deny the form of treatment contemplated by the statute because it believes the same ends may be achieved a "cheaper" cost by the court's own probation department. The General Assembly has taken that issue from the court's discretion in enacting the statute, in particular in its adoption of a definition of "appropriate facility or program" in subpart (B) (2) of R.C. 2951.04. In so doing the General Assembly may be presumed to have concluded that the expenditure of resources required by the statutory scheme is reasonable and necessary to achieve the legislative goals. The Court may not avoid that purpose by reason of its own views to the contrary, thus imposing a judicial veto of a proper legislative enactment.

To the extent the court is concerned that it loses necessary control of persons in treatment, we note that no provision of R.C. 2951.041 prevents the court from establishing supervision of the treatment process by a probation officer of the court. The court may reasonably require regular reporting by the program or the offender during treatment, and the court's probation department may be used to the same end as in other cases to secure faithful performance by the probationer of his obligations.

We must be presume the regularity of proceedings in the trial court. *Stites* v. *Administrator* (1853), 2 Ohio St. 588; *Railway Co.* v. *Herrick* (1892), 49 Ohio St. 25; 5 American Jurisprudence 2d, Appeal and Error, Section 895. However, the trial court may not act outside the scope of its legislative charge. We find that the trial court did so in this case when it based its decision on an issue not given to it for determination. Appellant's second assignment of error is sustained.

### III.
### *Conclusion*

The judgment of the trial court denying Appellant's motion for conditional probation, Appellant's subsequent plea of no contest, and the court's judgment of guilt entered after and as a result thereof. are vacated, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

WILSON, J., and BROGAN, J., Concur.