[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above-captioned case, which concerns a claim of illegal seizure of property by a state trooper, was tried to the court after the parties waived their claims for trial by jury. Prior to the commencement of the trial the plaintiff withdrew his claims against the State of Connecticut. At the conclusion of the plaintiff's case, he withdrew his claim for damages for intentional infliction of emotional distress. (Counts 4 and 5) At that time, upon a motion by the remaining defendant, Thomas Murray, and without opposition by the plaintiff, the court dismissed the plaintiff's claim for conversion (Counts 4 and 5) for failure to make out a prima facie case as to that claim.
The issues remaining for adjudication are set forth in Counts One and Two of the Third Revised Complaint. In those counts the plaintiff seeks money damages and injunctive relief against the defendant, Thomas Murray, on the claim that, acting under color of state law, he violated the plaintiff's right under the Fourth Amendment to the Constitution of the United States, applicable to the states pursuant to the Fourteenth Amendment, to be free from unreasonable searches and seizures, a claim actionable pursuant to42 U.S.C. § 1983.
Specifically, the plaintiff claims that when the defendant and several other law enforcement officials searched the plaintiff's residence on February 13, 1990, pursuant to a search warrant, the defendant seized items not authorized to be seized. CT Page 10492
The court finds the facts to be as follows. On February 13, 1990 and for some time before that date, defendant Thomas Murray was a state trooper assigned to the Statewide Narcotics Task Force. Other state troopers had submitted to a judge of this court an application for a warrant to search the residence of the plaintiff. In the warrant affidavit, the officers described an investigation that indicated that a man named "Frank" who drove a red Corvette and a Jaguar, had been identified along with another man, Glenn Wallen, as the source of a large supply of illegal narcotics to street sellers.
The affidavit linked Frank Parise to communications via a pager to a suspected seller of narcotics, and it recited information from various informants concerning Parise's involvement with Wallen, Parise's alleged sales of cocaine from 297 Lexington Avenue in New Haven, and Parise's involvement in supplying cocaine bearing a "Cabbage Patch" logo to street sellers. The affidavit indicated the reported likely presence of illegal drugs and weapons at 297 Lexington Avenue.
The search warrant application was granted by a judge of the Superior Court on February 13, 1990. The warrant authorized the defendant and other law enforcement officers to search, among other things, the first floor and basement of 297 Lexington Avenue. It authorized the officers to search for and seize the following:
 Cocaine, cutting agents, packaging materials, scales, drug paraphernalia as defined in section 21a-240(2)(A), monies derived from the sale of narcotics, records of narcotics, firearms as defined in section 53a-2(10) and ammunition, dangerous weapons, police scanning equipment, telephone answering machines, telephone paging systems, telephone toll records, safety deposit box keys, and/or records of safety deposit boxes and proof of residence.
The plaintiff alleges that among the items the defendant seized were the following items whose seizure the plaintiff claims was not authorized by the search warrant:
 1. two bank passbooks, one in the plaintiff's name and one a custodial account kept for the CT Page 10493 plaintiff's minor son, Frank A. Parise.
 2. four photographs of the plaintiff, with and without a young boy, in a red Corvette and of the Corvette itself.
 3. a box containing 21 silver Kennedy half dollars, two silver dollars, one dime, one 1978 Kennedy half dollar, one 1979 Italian coin and one bronze-colored coin.
 4. cash totalling $1,000.00 taken from the top drawer of the bureau in the master bedroom.
 5. two paper bags, one containing $8,396.00, the second containing $6,862.00 located on the floor of the master bedroom near a dresser.
 6. a paper box containing $69,020.00 located in a safe in the spare bedroom.
The above description of the items and their locations is as set forth in the search report of the state police in the portion headed "Evidence seized" (Ex. D). Each of the contested items is identified in the report as having been seized by Thomas Murray, who was serving as the evidence officer of the search. The defendant testified that in this role he inspected items located by other officers during the search and determined whether or not to seize them. He testified that he did not seize all items to which the other officers drew his attention and that he determined that many items, including jewelry found in the safe that contained the $69,020.00, were not subject to seizure under the terms of the warrant.
In addition to the contested items listed above, the defendant seized a number of weapons, a shotgun, ammunition, telephone monitoring detection equipment, and a gun cleaning kit. The plaintiff's complaint does not identify any of these items as having been illegally seized, and no claims based on their seizure or the seizure of other items other than those listed on pages 3-4 above will be considered.
The search took place during the afternoon of February 13, 1990. No one was present during the search other than police officers and no residents of the premises entered during the CT Page 10494 search.
The defendant testified that during the search he was in contact with other officers who were conducting a search of the premises where Glenn Wallen was believed to live, and that these officers reported having found in that location drug wrappings bearing the "Cabbage Patch" logo and a small amount of cocaine. At the time of the search, the defendant knew that the plaintiff had a past conviction arising from drug trafficking.
The State did not at any time after the search initiate a prosecution of the plaintiff relating to violations of the state narcotics statutes but turned the seized weapons over to federal officials, who prosecuted the plaintiff for violations of federal weapons statutes, of which he was convicted.
The money seized, except for the box of coins, was turned over to federal officials, who notified the plaintiff of his right to contest forfeiture. His counsel failed to mail the document contesting the forfeiture within the period designated, it arrived beyond the deadline, and the federal government has treated the money as forfeited pursuant to Title 19 U.S.C. § 1609.[1]
The other items seized from the plaintiff's residence have been in State Police custody since the date of the search. The court finds that defendant Thomas Murray was without authority to return them to the plaintiff without authorization by other police officials. The plaintiff never applied for the return of any of the items seized.
LEGALITY OF THE SEIZURES
The Fourth Amendment to the Constitution of the United States provides that "[N]o warrants shall issue but upon probable cause . . . particularly describing . . . the persons or things to be seized." The particularity requirement prevents the issuance of general warrants by insuring that a search extends no further than is necessary to find the objects listed in the warrant. Andresenv. Maryland, 427 U.S. 463, 480 (1976).
Police officers conducting a search pursuant to a warrant may seize only the items identified in the warrant and incriminating objects relating to the crime under investigation that are in plain view of the searching officers. Items not listed in a search warrant may be seized during a search without violating the Fourth CT Page 10495 Amendment if they are in plain view, Coolidge v. New Hampshire,403 U.S. 443, 465 (1970) and if their incriminating character is immediately apparent. Horton v. California, 496 U.S. 128, 136-7
(1990), citing Arizona v. Hicks, 480 U.S. 321 (1987).
In Horton v. California, supra, the United States Supreme Court considered whether the seizure of items not enumerated in a search warrant violated the Fourth Amendment. The warrant application in Horton had sought a warrant to search and to seize both the proceeds of a robbery and weapons used to perpetrate it. The reviewing court authorized a search only for proceeds, not for weapons. In the course of searching for the proceeds, the police officer found in plain view and seized weapons, a hand cuff key, a brochure, and items of clothing, all of which related to the robbery victim's description of the crime and its location. The Court observed that "[w]hen [the items] were discovered, it was immediately apparent to the officer that they constituted incriminating evidence. He had probable cause, not only to obtain a warrant to search for the stolen property, but also to believe that the weapons and handguns had been used in the crime he was investigating. The search was authorized by the warrant; the seizure was authorized by the "plain view" doctrine.[2]
It is necessary to apply these general principles to each of the items claimed to have been illegally seized to determine whether each one was either an item described in the warrant or an item in plain view during the search that was immediately apparent as incriminating evidence related to the crime under investigation.
A. Cash in the paper bags, in the safe, and in the bureau drawer.
Contrary to the assertion of the plaintiff, the court finds that these large quantities of cash were properly seized within the authorization of the warrant, which allowed seizure of "monies derived from the sale of narcotics." The court finds unpersuasive the plaintiff's argument that because the cash did not bear drug residue and was not accompanied by records of drug sales, it could not be seized.
During the search, the defendant was advised by officers at the search of the residence of Glenn Wallen that a substantial quantity of drug-packaging materials had been found. In view of the information, set forth in the warrant application, describing the Cabbage Patch distribution scope as large, the defendant was justified in regarding the unusually large amounts of cash, some of CT Page 10496 it oddly stored in paper bags on the floor, as evidence of Parise's participation in a drug operation that maintained different parts of its functions in different locations, especially since the defendant knew Parise to have been convicted for drug selling with others in the past.
The plaintiff claims that, unbeknownst to the defendant, he was engaged in a towing and wrecking operation which was a possible source of the cash. The evidence adduced on trial established that at the time of the search, the defendant was unaware of any economic activity of the plaintiff other than suspected drug-trafficking. The defendant clearly overstated his knowledge when, in an affidavit, he stated affirmatively "That I knew the plaintiff had no legitimate source of income."
In reality, the defendant did not know whether or not the defendant was engaged in any income-producing activity other than drug-trafficking, however he certainly had no knowledge that the plaintiff was involved in a cash business such that he should have been in doubt as to the provenance of the cash at the premises. This court finds that at the time the defendant seized the cash listed above, he had probable cause to believe that the money was "monies derived from the sale of narcotics."
As the federal court of appeals for the second circuit observed in United States v. Tramunti, 513 F.2d 1087, 1105 (1975), "[t]he possession of large amounts of unexplained cash in connection with evidence of narcotics trafficking on a large scale is similar to the possession of special means, such as tools or apparatus, which is admissible to show the doing of an act requiring those means." As the court noted, it is not necessary that the cash alone be evidence sufficient to convict, but only that it be evidence that, in conjunction with other evidence, may help prove the holder's participation in the crime. id.
The defendant's determination that the cash in the three locations in which it was found was "monies derived from the sale of narcotics" and could therefore be seized under the terms of the warrant was reasonable under all of the circumstances, including the confirmatory discovery of drug packaging materials at the Wallen residence and the discovery of weapons and electronic devices associated with drug dealing at the Parise residence.
Photographs
CT Page 10497
The photographs which the plaintiff claims were illegally seized depicted him and a child in a red Corvette and the car itself. A red Corvette is a distinctive car, and it was mentioned in the warrant application as one of the ways in which the plaintiff was identified as the "Frank" associated with Glenn Wallen in supplying street sellers of drugs. Photographs of such a car and of the suspected perpetrator in such a car was, under these circumstances, identification evidence and was subject to seizure pursuant to Horton v. California, supra, even though photographs were not specifically listed in the warrant. Since the defendant had a warrant that allowed him to search the area where the photographs were found, the "plain view" doctrine applied. SeeU.S. v. Jenkins, 901 F.2d 1075, 1082 (11th Cir. 1990), cert.denied, 111 U.S. Ct. 259 (1990).
Bank Passbooks
The plaintiff is correct in noting that the two New Haven Savings Bank passbooks are not among the items specifically listed in the search warrant. The defendant has offered two reasons for his determination that these two bank books should be seized: 1) as proof of residence and 2) as incriminating evidence found in plain view during an authorized search.
The bank passbooks bear the plaintiff's name and show recent large deposits, one to an account in the name of the plaintiff and another in the name of the plaintiff as custodian for a minor. The plaintiff characterizes the seizure of these items as the unreasonable infliction of loss of possession of personal documents.
The court is not required in this case to determine whether these items would be subject to being suppressed in a criminal trial but only whether the defendant should be held liable to their owner for having seized them.
The defendant has invoked the doctrine of qualified immunity, claiming that even if he seized items of the plaintiff's property that were not within the categories authorized by the warrant, he is not subject to civil liability because this doctrine provides a limited protection against personal liability to him as an individual employed in performing police functions. A police officer is immune from liability with regard to actions taken in the course of his employment unless he knew or reasonably should have known that the action he took would violate the constitutional CT Page 10498 rights of the plaintiff or if he took the action with malicious intent to cause a deprivation of constitutional rights or other injury. Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). The plaintiff does not claim that the defendant acted with malicious intent.
The Supreme Court has ruled that police officials conducting searches are shielded from liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635,638 (1986), citing Malley v. Briggs, 475 U.S. 335, 341
(1986).[3] The test is not a subjective one based on the belief of the officer but rather "whether an official protected by qualified immunity may be held personally liable for an alleged unlawful official action generally turns on `objective legal reasonableness' of the action" assessed in light of the legal rules that were `clearly established' at the time it was taken," Anderson v.Creighton, 483 U.S. at 639, citing Harlow v. Fitzgerald,457 U.S. at 819.
The inquiry as to "objective legal reasonableness" requires scrutiny of the specific circumstances, not simply a recognition of the words of the Fourth Amendment, and a police officer is not liable if he "reasonably but mistakenly" concluded that probable cause was present. Anderson v. Creighton, 483 U.S. 640-41. Thus, the issue in the case before the court is whether a reasonable officer could have believed the seizure of the bank passbooks to be lawful, in light of clearly established law and the information the officer possessed. id.
The plaintiff erroneously argues that qualified immunity is not applicable because it was clearly established that only items described in a warrant could be seized. For this proposition, the plaintiff cites Marron v. United States, 275 U.S. 192 (1927) and overlooks the further development of the law of seizure, which recognized as constitutionally permissible seizure of items not specifically described in the warrant under a variety of circumstances. See, e.g., Arizona v. Hicks, supra; Coolidge v. NewHampshire, supra. Whether or not the "plain view" doctrine applied to the passbooks, there is certainly an ambiguity as to whether these items were seizable as proof of residence or as evidence of "monies derived from the sale of narcotics," since they showed recent deposits of considerable sums. The plaintiff has cited no case law clearly establishing that items of this type did not constitute proof of residence. Under the circumstances, with a CT Page 10499 warrant broadly authorizing seizure of items that tended to establish the plaintiff's residence in the premises searched, it appears that even if Thomas Murray was mistaken in seizing this property, it was not unreasonable in view of existing law for him to have concluded that it was within the scope of the warrant. For that reason, the doctrine of qualified immunity applies to the seizure of the two bank passbooks.
Box of Coins
The final item that the plaintiff claims was illegally seized is a box of coins, mostly Kennedy half dollars that police officers found in the safe along with jewelry and approximately $69,000 in cash. While the coins were in a separate box, they were clearly money, and the search warrant authorized seizure of "monies derived from the sale of narcotics." The court finds that under the circumstances that the coins were currency in the same location as the large amount of cash, they appeared to be subject to the seizure order. The defendant testified that he is aware that drugs are sometimes bought with stolen coin collections. Whether or not the defendant was mistaken in perceiving that the coins were "monies derived from the sale of narcotics," under the circumstances this court finds that a reasonable police officer could have concluded that the coins were subject to seizure and that he would not have been held on the basis of established law to distinguish this money from the other money located in the same place.
The court finds that the doctrine of qualified immunity bars liability for seizure of this item.
CONCLUSION
The court finds that each of the items claimed to have been seized in violation of the Fourth Amendment was either an item authorized to be seized or an item whose seizure does not give rise to liability because of the doctrine of qualified immunity.
Judgment shall enter in favor of the defendant, who shall recover his court costs.
Beverly J. Hodgson Judge of the Superior Court